# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
# CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE** **2. PLEASE TYPE OR PRINT** **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| We The Patriots USA, Inc., et al.<br>v.<br>Connecticut Office of Early Childhood Development, et al. | D.Conn. | Janet Bond Arterton |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>January 11, 2022 | District Court Docket No.:<br>3:21-cv-00597-JBA |
| | Date the Notice of Appeal was Filed:<br>February 1, 2022 | Is this a Cross Appeal?<br>☐ Yes ☑ No |

| | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| **Attorney(s) for Appellant(s):**<br>☑ Plaintiff<br>☐ Defendant | Norman A. Pattis<br>Cameron L. Atkinson | 383 Orange Street<br>New Haven, CT 06511 | 203-393-3017 | 203-393-9745 | npattis@pattisandsmith.com<br>catkinson@pattisandsmith.com |
| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☑ Defendant | See attached sheet since the Defendants have separate counsel | | | | |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☐ Yes ☑ No |
|---|---|---|---|
| N/A | N/A | N/A | If Yes, provide the following:<br>Case Name:<br>2d Cir. Docket No.: Reporter Citation: (i.e., F.3d or Fed. App.) |

***ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

**PART A: JURISDICTION**

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☐ Diversity | ☑ Final Decision | ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☐ Other (specify): ________ | ☐ Interlocutory Decision Appealable As of Right | ☐ Other (specify): ________ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2016)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- [x] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [x] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [x] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [x] Dismissal/merit
- [x] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ ______
  - [ ] Granted: $ ______
  - [ ] Denied: $ ______
- [x] Injunctions:
  - [ ] Preliminary
  - [x] Permanent
  - [x] Denied

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [x] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): ___________
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): __________________
- [ ] Other (specify): __________________

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [x] Yes
- [ ] No

Will appeal raise a matter of first impression?

- [x] Yes
- [ ] No

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: ______________________ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:
   (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [x] No
   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [x] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant: We The Patriots USA, Inc.; CT Freedom Alliance, LLC; Constantina Lora; Miriam Hidalgo; Asma Elidrissi

Date: 3/9/2022

Signature of Counsel of Record: /s/ Norman A. Pattis /s/

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the$505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

## LIST OF APPELLEES' COUNSEL

The first three appellees share the same counsel.

1. **Connecticut Office of Early Childhood Development**
2. **Connecticut State Department of Education**
3. **Connecticut Department of Public Health**


Darren P. Cunningham
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5074
Fax: 860-808-5385
Email: darren.cunningham@ct.gov

Timothy J. Holzman
State of CT, Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5210
Fax: 860-808-5385
Email: timothy.holzman@ct.gov

Michael Skold
State of Connecticut Office of the Attorney General
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: michael.skold@ct.gov

Alayna M. Stone
Office of the Attorney General
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: alayna.stone@ct.gov

The next two appellees are represented by the same counsel:

4. **Bethel Board of Education**
5. **Stamford Board of Education**


Michael C. Harrington
FordHarrison LLP
185 Asylum Street
CityPlace II, Suite 610
Hartford, CT 06103
860-740-1355
Fax: 860-578-2075
Email: mharrington@fordharrison.com

Johanna G. Zelman
Ford Harrison, LLP
CityPlace II
185 Asylum Street
Suite 610
Hartford, CT 06103
860-740-1361
Fax: 860-740-1393
Email: jzelman@fordharrison.com


6. **Glastonbury Board of Education**


Thomas R. Gerarde
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114-1190
860-249-1361
Fax: 860-249-7665
Email: tgerarde@hl-law.com

## ADDENDUM A

The underlying action is an action for declaratory and injunctive relief against the Connecticut Office of Early Childhood Development, the Connecticut Department of Education, the Connecticut Department of Public Health, the Stamford Board of Education, the Bethel Board of Education and the Glastonbury Board of Education. It seeks judicial relief to declare Connecticut's elimination of the religious exemption to its vaccination requirements for daycares, pre-schools, kindergartens, and schools unconstitutional and, in the case of one plaintiff, a violation of the IDEA. The Plaintiffs – We The Patriots USA, Inc., CT Freedom Alliance, LLC; Constantina Lora, Miriam Hidalgo, and Asma Elidrissi –have brought the underlying action to permanently enjoin enforcement of the law eliminating the religious exemption.

The Defendants moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The U.S. District Court for the District of Connecticut granted their motions to dismiss.

## ADDENDUM B

The questions presented are:

**1. Whether The District Court Erred By Dismissing The Plaintiffs' Claims Against The State Defendants For Lack Of Subject Matter Jurisdiction On Eleventh Amendment Grounds And Denying Them Leave To Amend.**

The standard of review for the dismissal for lack of subject matter jurisdiction is as follows: Factual findings are reviewed for clear error and legal conclusions are reviewed *de novo*. *See Close v. New York*, 125 F.3d 31, 35 (2d Cir. 1997).

The standard of review for a denial of leave to amend is ordinarily reviewable under the "abuse of discretion" standard, but appellate courts review a denial of leave to amend on the grounds of futility under a *de novo* standard of review. *Smith v. Hogan*, 794 F.3d 249, 253 (2d Cir. 2015). Both standards are applicable here.

**2. Whether The District Court Erred By Dismissing The Claims Of We The Patriots USA, Inc. and CT Freedom Alliance, LLC For Lack Of Associational Standing.**

The standard of review for a dismissal for lack of standing is *de novo*. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 71 (2d Cir. 2013).

3. **Whether The District Court Erred By Dismissing The Plaintiffs' Free Exercise Claims For Failure To State A Claim Upon Which Relief Can Be Granted.**

The standard of review is *de novo. Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011).

4. **Whether The District Court Erred By Dismissing The Plaintiffs' Privacy And Medical Freedom Claims For Failure To State A Claim Upon Which Relief Can Be Granted.**

The standard of review is *de novo. Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011).

5. **Whether The District Court Erred By Dismissing The Plaintiffs' Equal Protection Claims For Failure To State A Claim Upon Which Relief Can Be Granted.**

The standard of review is *de novo. Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011).

6. **Whether The District Court Erred By Dismissing The Plaintiffs' Child Rearing Claims For Failure To State A Claim Upon Which Relief Can Be Granted.**

The standard of review is *de novo. Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011).

**7. Whether The District Court Erred By Dismissing Plaintiff Elidrissi's IDEA Claim For Failure To State A Claim Upon Which Relief Can Be Granted.**

The standard of review is *de novo. Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d. Cir. 2011).

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

WE THE PATRIOTS USA, INC; CT FREEDOM ALLIANCE, LLC; CONSTANTINA LORA; MIRIAM HIDALGO; ASMA ELIDRISSI;

Plaintiffs,

v.

CONNECTICUT OFFICE OF EARLY CHILDHOOD DEVELOPMENT; CONNECTICUT STATE DEPARTMENT OF EDUCATION; CONNECTICUT DEPARTMENT OF PUBLIC HEALTH; BETHEL BOARD OF EDUCATION; GLASTONBURY BOARD OF EDUCATION; STAMFORD BOARD OF EDUCATION;

Defendants.

DKT No.: 3:21-cv-00597-JBA

February 1, 2022

**NOTICE OF APPEAL**

The Plaintiffs hereby give notice of their appeal of the Court's January 11, 2022 dismissal of their case. *See* Dkt. 56.

THE PLAINTIFFS

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com
Fed Bar. No.: ct13120

/s/ Cameron L. Atkinson /s/
CAMERON L. ATKINSON, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
catkinson@pattisandsmith.com
Federal Bar No.: ct31219

/s/ Brian D. Festa /s/
BRIAN D. FESTA, ESQ.
General Counsel
CT Freedom Alliance, LLC
123 Farmington Ave., Ste. 175
Bristol, CT 06010
Tel: (860) 261-5605
brian@ctfreedomalliance.com
Fed. Bar. No.: ct30963

**CERTIFICATE OF SERVICE**

I hereby certify that, on the above-captioned date, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ NORMAN A. PATTIS /s/

APPEAL,CLOSED,EFILE

# U.S. District Court
# District of Connecticut (New Haven)
# CIVIL DOCKET FOR CASE #: 3:21-cv-00597-JBA

We The Patriots USA, Inc et al v. Connecticut Office of Early Childhood Development et al
Assigned to: Judge Janet Bond Arterton
Cause: 42:1983 Civil Rights Act

Date Filed: 04/30/2021
Date Terminated: 01/12/2022
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**We The Patriots USA, Inc** represented by

**Brian Festa**
Connecticut
215 Grove St
Bristol, CT 06010
860-878-5709
Email: bfesta78@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl Austin Voss**
Pattis & Smith, LLC
383 Orange Street
New Haven, CT 06511
203-393-3017
Email: avoss@pattisandsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Murray Smith**
Pattis & Smith, LLC
383 Orange Street, First Floor
New Haven, CT 06511
203-393-3017
Fax: 203-393-9745
Email: ksmith@pattisandsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
The Pattis Law Firm, LLC
383 Orange St., First Floor
New Haven, CT 06511
203-393-3017
Fax: 203-393-9745
Email: npattis@pattisandsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Edward Reiland**

Pattis and Smith, LLC
383 Orange St.
New Haven, CT 06511
203-393-3017
Email: zreiland@pattisandsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Lee Atkinson**
Pattis & Smith, LLC
383 Orange Street
New Haven, CT 06511
203-393-3017
Email: catkinson@pattisandsmith.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CT Freedom Alliance, LLC** represented by **Brian Festa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl Austin Voss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Murray Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Edward Reiland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Lee Atkinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Constantina Lora** represented by **Brian Festa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl Austin Voss**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Murray Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Edward Reiland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Lee Atkinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Miriam Hidalgo** represented by **Brian Festa**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl Austin Voss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Murray Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Edward Reiland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Lee Atkinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Asma Elidrissi** represented by **Brian Festa**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl Austin Voss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Murray Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Edward Reiland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cameron Lee Atkinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Connecticut Office of Early Childhood Development** represented by

**Alayna M. Stone**
Office of the Attorney General
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: alayna.stone@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren P. Cunningham**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5074
Fax: 860-808-5385
Email: darren.cunningham@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Skold**

State of Connecticut Office of the Attorney General
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: michael.skold@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Holzman**
State of CT, Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5210
Email: timothy.holzman@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Connecticut State Department of Education** represented by

**Alayna M. Stone**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren P. Cunningham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Skold**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Holzman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Connecticut Department of Public Health** represented by

**Alayna M. Stone**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren P. Cunningham**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Skold**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Holzman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Bethel Board of Education** | represented by | **Johanna G. Zelman**<br>Ford Harrison, LLP<br>CityPlace II<br>185 Asylum Street<br>Suite 610<br>Hartford, CT 06103<br>860-740-1361<br>Fax: 860-740-1393<br>Email: jzelman@fordharrison.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Michael C. Harrington**<br>FordHarrison LLP<br>185 Asylum Street<br>CityPlace II, Suite 610<br>Hartford, CT 06103<br>860-740-1355<br>Fax: 860-578-2075<br>Email: mharrington@fordharrison.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Glastonbury Board of Education** | represented by | **Thomas R. Gerarde**<br>Howd & Ludorf<br>65 Wethersfield Ave.<br>Hartford, CT 06114-1190<br>860-249-1361<br>Fax: 860-249-7665<br>Email: tgerarde@hl-law.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Stamford Board Of Education** | represented by | **Johanna G. Zelman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Michael C. Harrington**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

**Child USA** represented by **Paul A. Slager**
Silver, Golub & Teitell
184 Atlantic St.,
Stamford, CT 06901
203-325-4491
Email: pslager@sgtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Americans United for Separation of Church and State** represented by **Alex J. Luchenitser**
Americans United for Separation of Church and State
1301 K Street NW, Suite 850, East Tower
Washington, DC 20005
202-466-3234
Fax: 202-466-2587
Email: luchenitser@au.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel S. Blinn**
Consumer Law Group
35 Cold Spring Rd., Suite 512
Rocky Hill, CT 06067
860-571-0408
Fax: 860-571-7457
Email: dblinn@consumerlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrianne Spoto**
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
202-466-3234
Fax: 202-466-3353
Email: spoto@au.org
*ATTORNEY TO BE NOTICED*

**Richard B. Katskee**
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
202-466-3234
Fax: 202-466-3353
Email: katskee@au.org
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Central Conference of American Rabbis** | represented by | **Alex J. Luchenitser**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Daniel S. Blinn**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Adrianne Spoto**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Richard B. Katskee**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**<u>Amicus</u>**

| | | |
|---|---|---|
| **Interfaith Alliance Foundation** | represented by | **Alex J. Luchenitser**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Daniel S. Blinn**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Adrianne Spoto**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Richard B. Katskee**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**<u>Amicus</u>**

| | | |
|---|---|---|
| **Men of Reform Judaism** | represented by | **Alex J. Luchenitser**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Daniel S. Blinn**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Adrianne Spoto**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Richard B. Katskee** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Reconstructionist Rabbinical Association** represented by **Alex J. Luchenitser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel S. Blinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrianne Spoto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard B. Katskee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Union for Reform Judaism** represented by **Alex J. Luchenitser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel S. Blinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrianne Spoto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard B. Katskee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Women of Reform Judaism** represented by **Alex J. Luchenitser**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel S. Blinn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adrianne Spoto**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard B. Katskee**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/30/2021 | 1 | COMPLAINT against All Defendants ( Filing fee $402 receipt number ACTDC-6491677.), filed by Constantina Lora, CT FREEDOM ALLIANCE, LLC, Miriam Hidalgo, WE THE PATRIOTS USA, INC., Asma Elidrissi. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Pattis, Norman) (Entered: 04/30/2021) |
| 04/30/2021 | | Judge Janet Bond Arterton added. (Oliver, T.) (Entered: 05/03/2021) |
| 04/30/2021 | 2 | Order on Pretrial Deadlines: Amended Pleadings due by 6/29/2021 Discovery due by 10/30/2021 Dispositive Motions due by 12/4/2021<br>Signed by Clerk on 4/30/2021.(Nuzzi, Tiffany) (Entered: 05/03/2021) |
| 04/30/2021 | 3 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Janet Bond Arterton on 4/30/2021.(Nuzzi, Tiffany) (Entered: 05/03/2021) |
| 04/30/2021 | 4 | STANDING PROTECTIVE ORDER<br>Signed by Judge Janet Bond Arterton on 4/30/2021.(Nuzzi, Tiffany) (Entered: 05/03/2021) |
| 05/01/2021 | | Request for Clerk to issue summons as to All Defendants. (Pattis, Norman) (Entered: 05/01/2021) |
| 05/06/2021 | 5 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Bethel Board of Education, Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education, Glastonbury Board of Education* with answer to complaint due within *21* days. Attorney *Norman A. Pattis* *The Pattis Law Firm, LLC* *383 Orange St., First Floor* *New Haven, CT 06511*. (Nuzzi, Tiffany) (Entered: 05/06/2021) |
| 05/17/2021 | 6 | NOTICE of Appearance by Johanna G. Zelman on behalf of Bethel Board of Education (Zelman, Johanna) (Entered: 05/17/2021) |
| 05/17/2021 | 7 | NOTICE of Appearance by Michael C. Harrington on behalf of Bethel Board of Education (Harrington, Michael) (Entered: 05/17/2021) |
| 05/18/2021 | 8 | SUMMONS Returned Executed by Constantina Lora, CT Freedom Alliance, LLC, Miriam Hidalgo, We The Patriots USA, Inc, Asma Elidrissi. All Defendants. (Pattis, Norman) (Entered: 05/18/2021) |
| 05/24/2021 | 9 | NOTICE of Appearance by Johanna G. Zelman on behalf of Stamford Board Of Education (Zelman, Johanna) (Entered: 05/24/2021) |
| 05/24/2021 | 10 | NOTICE of Appearance by Michael C. Harrington on behalf of Stamford Board Of Education (Harrington, Michael) (Entered: 05/24/2021) |
| 05/26/2021 | 11 | NOTICE of Appearance by Darren P. Cunningham on behalf of Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education (Cunningham, Darren) (Entered: 05/26/2021) |
| 05/26/2021 | 12 | NOTICE of Appearance by Timothy J. Holzman on behalf of Connecticut Department of |

| | | |
|---|---|---|
| | | Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education (Holzman, Timothy) (Entered: 05/26/2021) |
| 05/27/2021 | 13 | NOTICE of Appearance by Michael Skold on behalf of Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education *In Addition to Counsel on File* (Skold, Michael) (Entered: 05/27/2021) |
| 05/27/2021 | 14 | NOTICE of Appearance by Alayna M. Stone on behalf of Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education *In Addition to Counsel of File* (Stone, Alayna) (Entered: 05/27/2021) |
| 05/27/2021 | 15 | NOTICE of Appearance by Thomas R. Gerarde on behalf of Glastonbury Board of Education (Gerarde, Thomas) (Entered: 05/27/2021) |
| 05/27/2021 | 16 | Consent MOTION for Extension of Time until July 15, 2021*for all Defendants to* Respond to Complaint 1 Complaint, by Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education. (Cunningham, Darren) (Entered: 05/27/2021) |
| 06/08/2021 | 17 | MOTION for Pre-Filing Conference by Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education. (Cunningham, Darren) (Entered: 06/08/2021) |
| 06/09/2021 | 18 | ORDER granting 16 Motion for Extension of Time to File Answer, on consent, to 7/15/21. Signed by Judge Janet Bond Arterton on 6/9/21. (Tooker, Aimee) (Entered: 06/09/2021) |
| 06/09/2021 | | Answer deadline updated for All Defendants. (Tooker, Aimee) (Entered: 06/09/2021) |
| 06/15/2021 | 19 | ORDER granting 17 Motion for Pre-Filing Conference. Signed by Judge Janet Bond Arterton on 6/14/21. (Tooker, Aimee) (Entered: 06/15/2021) |
| 06/15/2021 | | A telephonic pre-filing conference will be held 6/30/21 at 4:00 p.m. as follows: 1-877-402-9753; Access Code: 3535720. (Tooker, Aimee) (Entered: 06/15/2021) |
| 07/01/2021 | 20 | SCHEDULING ORDER: Pursuant to the colloquy with counsel on the record 6/30/21, the following is ordered: (1) No amended complaint is intended. (2) Defendants' Motion to Dismiss will be filed by 7/29/21; opposition will be filed by 8/9/21; any reply will be filed by 9/2/21. (3) Oral Argument will be held 10/19/21 at 2:00 p.m., Courtroom Two. Signed by Judge Janet Bond Arterton on 6/30/21.(Tooker, Aimee) (Entered: 07/01/2021) |
| 07/01/2021 | | Oral argument is set for 10/19/2021 at 2:00 PM in Courtroom Two, 141 Church St., New Haven, CT before Judge Janet Bond Arterton (Tooker, Aimee) (Entered: 07/01/2021) |
| 07/29/2021 | 21 | MOTION to Dismiss by Glastonbury Board of Education.Responses due by 8/19/2021 (Attachments: # 1 Memorandum in Support)(Gerarde, Thomas) (Entered: 07/29/2021) |
| 07/29/2021 | 22 | MOTION to Dismiss by Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education.Responses due by 8/19/2021 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Cunningham, Darren) (Entered: 07/29/2021) |
| 07/29/2021 | 23 | MOTION to Dismiss by Bethel Board of Education, Stamford Board Of Education.Responses due by 8/19/2021 (Attachments: # 1 Memorandum in Support) (Zelman, Johanna) (Entered: 07/29/2021) |
| 07/30/2021 | 24 | NOTICE of Appearance by Paul A. Slager on behalf of Child USA (Slager, Paul) (Entered: 07/30/2021) |

| | | |
|---|---|---|
| 07/30/2021 | 25 | MOTION for Leave to File by Child USA. (Attachments: # 1 Exhibit A -Amicus Curiae Brief)(Slager, Paul) (Entered: 07/30/2021) |
| 08/05/2021 | 26 | NOTICE of Appearance by Daniel S. Blinn on behalf of Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism (Blinn, Daniel) (Entered: 08/05/2021) |
| 08/05/2021 | 27 | MOTION for Leave to File *Unopposed Motion for Leave to file Amicus Curiae brief in support of defendants' Motions to Dismiss* by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Attachments: # 1 Memorandum in Support)(Blinn, Daniel) (Entered: 08/05/2021) |
| 08/05/2021 | 28 | MOTION for Disclosure *Disclosure Statement of proposed Amici Curiae* by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Blinn, Daniel) (Entered: 08/05/2021) |
| 08/05/2021 | 29 | MOTION for Attorney(s) Alex J. Luchenitser to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601533) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Attachments: # 1 Declaration of Alex J. Luchenitser)(Blinn, Daniel) (Entered: 08/05/2021) |
| 08/05/2021 | 30 | MOTION for Attorney(s) Richard B. Katskee to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601548) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Attachments: # 1 Declaration of Richard B. Katskee)(Blinn, Daniel) (Entered: 08/05/2021) |
| 08/05/2021 | 31 | MOTION for Attorney(s) Adrianne M. Spoto to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601552) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Attachments: # 1 Declaration of Adrianne M. Spoto)(Blinn, Daniel) (Entered: 08/05/2021) |
| 08/06/2021 | 32 | ORDER granting 29 Motion for Attorney Alex J. Luchenitser to Appear Pro Hac Vice. Certificate of Good Standing due by 10/5/2021. Signed by Clerk on 8/6/2021. (Freberg, B) (Entered: 08/06/2021) |
| 08/06/2021 | 33 | ORDER granting 30 Motion for Attorney Richard B. Katskee to Appear Pro Hac Vice. Certificate of Good Standing due by 10/5/2021. Signed by Clerk on 8/6/2021. (Freberg, B) (Entered: 08/06/2021) |
| 08/06/2021 | 34 | ORDER granting 31 Motion for Attorney Adrianne M. Spoto to Appear Pro Hac Vice. Certificate of Good Standing due by 10/5/2021. Signed by Clerk on 8/6/2021. (Freberg, B) (Entered: 08/06/2021) |
| 08/09/2021 | 35 | Memorandum in Opposition re 22 MOTION to Dismiss , 23 MOTION to Dismiss , 21 MOTION to Dismiss filed by CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc. (Pattis, Norman) (Entered: 08/09/2021) |

| | | |
|---|---|---|
| 08/10/2021 | 36 | ORDER granting 27 Motion for Leave to File Amicus Curiae Brief, without objection. Counsel shall file their Brief in Support of Defendants' Motion to Dismiss. Signed by Judge Janet Bond Arterton on 8/10/21`. (Tooker, Aimee) (Entered: 08/10/2021) |
| 08/11/2021 | 37 | Memorandum in Support re 22 MOTION to Dismiss , 23 MOTION to Dismiss , 25 MOTION for Leave to File , 21 MOTION to Dismiss filed by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Blinn, Daniel) (Entered: 08/11/2021) |
| 08/13/2021 | 38 | NOTICE of Appearance by Alex J. Luchenitser on behalf of Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism (Luchenitser, Alex) (Entered: 08/13/2021) |
| 08/13/2021 | 39 | CERTIFICATE OF GOOD STANDING re 29 MOTION for Attorney(s) Alex J. Luchenitser to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601533) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Luchenitser, Alex) (Entered: 08/13/2021) |
| 08/13/2021 | 40 | NOTICE of Appearance by Adrianne Spoto on behalf of Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism (Spoto, Adrianne) (Entered: 08/13/2021) |
| 08/13/2021 | 41 | CERTIFICATE OF GOOD STANDING re 31 MOTION for Attorney(s) Adrianne M. Spoto to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601552) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Spoto, Adrianne) (Entered: 08/13/2021) |
| 08/13/2021 | 42 | NOTICE of Appearance by Richard B. Katskee on behalf of Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism (Katskee, Richard) (Entered: 08/13/2021) |
| 08/13/2021 | 43 | CERTIFICATE OF GOOD STANDING re 30 MOTION for Attorney(s) Richard B. Katskee to be Admitted Pro Hac Vice (paid $200 PHV fee; receipt number ACTDC-6601548) by Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, Women of Reform Judaism. (Katskee, Richard) (Entered: 08/13/2021) |
| 09/02/2021 | 44 | REPLY to Response to 22 MOTION to Dismiss filed by Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education. (Attachments: # 1 Exhibit A)(Cunningham, Darren) (Entered: 09/02/2021) |
| 09/02/2021 | 45 | REPLY to Response to 21 MOTION to Dismiss filed by Glastonbury Board of Education. (Gerarde, Thomas) (Entered: 09/02/2021) |
| 09/02/2021 | 46 | REPLY to Response to 23 MOTION to Dismiss filed by Bethel Board of Education, |

| | | |
|---|---|---|
| | | Stamford Board Of Education. (Zelman, Johanna) (Entered: 09/02/2021) |
| 10/08/2021 | 47 | Oral Argument on Motions 21 22 23 has been rescheduled to October 27, 2021 at 2:30 p.m. in Courtroom Two, 141 Church Street, New Haven, CT. (Tooker, Aimee) (Entered: 10/08/2021) |
| 10/08/2021 | 48 | ORDER granting 25 Motion for Leave to Participate as Amicus Curiae. Signed by Judge Janet Bond Arterton on 10/8/21. (Tooker, Aimee) (Entered: 10/08/2021) |
| 10/18/2021 | | Oral Argument set down for October 27, 2021 at 2:30 p.m. will be held via Zoom as follows: https://www.zoomgov.com/j/16190030391; Meeting ID: 161 9003 0391. Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Tooker, Aimee) (Entered: 10/18/2021) |
| 10/19/2021 | 49 | NOTICE of Appearance by Kevin Murray Smith on behalf of CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc (Smith, Kevin) (Entered: 10/19/2021) |
| 10/20/2021 | 50 | MOTION for Attorney(s) Earl Austin Voss to be Admitted Pro Hac Vice by CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc. $200 filing fee paid, tracking ID# ACTDC-6690359. (Attachments: # 1 Affidavit in Support, # 2 Certificate of Good Standing)(Freberg, B) (Entered: 10/20/2021) |
| 10/21/2021 | 51 | ORDER granting 50 Motion for Attorney(s) Earl Austin Voss to be Admitted Pro Hac Vice. Signed by Clerk on 10/21/2021. (Gutierrez, Y.) (Entered: 10/21/2021) |
| 10/22/2021 | 52 | NOTICE of Appearance by Earl Austin Voss on behalf of CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc (Voss, Earl) (Entered: 10/22/2021) |
| 10/22/2021 | 53 | NOTICE of Appearance by Zachary Edward Reiland on behalf of CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc (Reiland, Zachary) (Entered: 10/22/2021) |
| 10/26/2021 | | Oral Argument has been scheduled for 10/27/21 at 2:30 p.m. via Zoom. The Zoom link has been modified and is as follows: https://www.zoomgov.com/j/1602759396?pwd=OWx6YzlPZlQ1QllFUU1BQTErUTFyQT09; Meeting ID: 160 275 9396;Passcode: 976829 (Tooker, Aimee) (Entered: 10/26/2021) |
| 10/27/2021 | 54 | Minute Entry for proceedings held before Judge Janet Bond Arterton:<br>Motion Hearing held on 10/27/2021.<br>The Defendants' Motions to Dismiss (Doc. # 21 , 22 and 23 ) are taken under advisement.<br>Total Time: 1 hour and 13 minutes (Court Reporter Corinne Thomas) (Reis, Julia) (Entered: 10/27/2021) |
| 11/17/2021 | 55 | NOTICE by Connecticut Department of Public Health, Connecticut Office of Early Childhood Development, Connecticut State Department of Education re 22 MOTION to Dismiss (Attachments: # 1 Opinion)(Cunningham, Darren) (Entered: 11/17/2021) |
| 01/11/2022 | 56 | ORDER: For the reasons set forth in the attached Order, Defendants' Motions to Dismiss 21 , 22 , 23 are GRANTED. Signed by Judge Janet Bond Arterton on 01/11/2022. (Canevari, D.) (Entered: 01/11/2022) |
| 01/12/2022 | 57 | JUDGMENT. |

| | | |
|---|---|---|
| | | For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms Signed by Clerk on 1/12/2022. (Reis, Julia) (Additional attachment(s) added on 1/12/2022: # 1 Replacement PDF) (Reis, Julia). (Entered: 01/12/2022) |
| 01/12/2022 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey (Reis, Julia) (Entered: 01/12/2022) |
| 01/12/2022 | 58 | NOTICE of Appearance by Cameron Lee Atkinson on behalf of CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc *In Preparation For Appeal* (Atkinson, Cameron) (Entered: 01/12/2022) |
| 02/01/2022 | 59 | NOTICE OF APPEAL as to 57 Judgment, 56 Order on Motion to Dismiss,, by CT Freedom Alliance, LLC, Asma Elidrissi, Miriam Hidalgo, Constantina Lora, We The Patriots USA, Inc. Filing fee $ 505, receipt number CCTDC-6813794. (Pattis, Norman) (Entered: 02/01/2022) |
| 02/02/2022 | 60 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 59 Notice of Appeal,. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: None (Imbriani, Susan) (Entered: 02/02/2022) |

## PACER Service Center

### Transaction Receipt

| 03/09/2022 20:14:08 | | | |
|---|---|---|---|
| **PACER Login:** | normpattis | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-00597-JBA |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WE THE PATRIOTS USA, INC,
CT FREEDOM ALLIANCE, LLC,
CONSTANTINA LORA, MIRIAM
HIDALGO, ASMA ELIDRISSI

Plaintiffs

V. 3:21-cv-00597-JBA

CONNECTICUT OFFICE OF
EARLY CHILDHOOD DEVELOPMENT,
CONNECTICUT STATE DEPARTMENT
OF EDUCATION, CONNECTICUT
DEPARTMENT OF PUBLIC HEALTH,
BETHEL BOARD OF EDUCATION,
GLASTONBURY BOARD OF
EDUCATION,

Defendants

JUDGMENT

This action came on for consideration on defendants' motions to dismiss (Doc. #s 21, 22, 23) before the Honorable Janet Bond Arterton, Senior United States District Judge. On January 11, 2022, the Court entered an order granting the motions based on the reasons stated in the ruling. It is therefore;

ORDERED, ADJUDGED, and DECREED that judgment shall enter in favor of the defendants and the case is closed.

Dated at New Haven, Connecticut, this 12th day of January 2022.

DINAH MILTON KINNEY, Clerk

By: /s/ Julia Reis
Deputy Clerk

EOD: 1/12/2022

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WE THE PATRIOTS USA, INC; CT FREEDOM ALLIANCE, LLC; CONSTANTINA LORA; MIRIAM HIDALGO; and ASMA ELIDRISSI,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>CONNECTICUT OFFICE OF EARLY CHILDHOOD DEVELOPMENT; CONNECTICUT STATE DEPARTMENT OF EDUCATION; CONNECTICUT DEPARTMENT OF PUBLIC HEALTH; BETHEL BOARD OF EDUCATION; GLASTONBURY BOARD OF EDUCATION; and STAMFORD BOARD OF EDUCATION,<br><br>*Defendants*. | Civil No. 3:21cv597 (JBA)<br><br>January 11, 2022 |

**ORDER GRANTING MOTIONS TO DISMISS**

The Religion Clause of the First Amendment itself contains two clauses—the Establishment Clause and the Free Exercise Clause. U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."). "[T]here are some state actions permitted by the Establishment Clause but not required by the Free Exercise Clause." *Locke v. Davey*, 540 U.S. 712, 719 (2004) (concluding that the state did not violate the Free Exercise Clause where it refused to provide scholarship aid to students seeking devotional theology degrees). Religious exemptions to vaccine mandates provide such an example. *See Phillips v. City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015) ("New York law goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs.").

Connecticut Public Act No. 21-6 ("P.A. 21-6") requires students in public or private school to be vaccinated against certain communicable diseases. (Compl. [Doc. # 1] ¶ 17.) Connecticut law previously allowed students to obtain a religious exemption to the vaccine

requirement, but section one of P.A. 21-6 provides no religious exemption to students that do not have a prior existing exemption. (*Id.*) Plaintiffs seek to permanently enjoin Defendants from enforcing P.A. 21-6 and request a declaratory judgment that P.A. 21-6 violates the Free Exercise Clause of the First Amendment; the right to privacy and medical freedom under the First, Fourth, Fifth, and Fourteenth Amendments; the Equal Protection Clause of the Fourteenth Amendment; the right to child rearing under the Fourteenth Amendment; and the Individuals with Disabilities Education Act ("IDEA"). (*Id.* at 14.) Defendants move to dismiss all five counts [Docs. ## 21, 22, 23]. Child USA, Americans United for Separation of Church and State, Central Conference of American Rabbis, Interfaith Alliance Foundation, Men of Reform Judaism, Reconstructionist Rabbinical Association, Union for Reform Judaism, and Women of Reform Judaism join as amici curiae, urging dismissal of Plaintiffs' complaint [Docs. ## 25, 27].

For the reasons that follow, the Court GRANTS Defendants' Motions to Dismiss [Docs. ## 21, 22, 23]. In summary, the Court concludes that Counts One through Four against the State Agency Defendants must be dismissed for lack of subject matter jurisdiction because the state agencies are "arms of the state" and entitled to Eleventh Amendment Immunity. Counts One through Five brought by the associational plaintiffs are also dismissed for lack of jurisdiction because these plaintiffs lack associational standing.

The individual counts must be dismissed for failure to state a claim. Count One, alleging a violation of the Free Exercise Clause, is dismissed because mandatory vaccination as a condition to school enrollment does not violate the Free Exercise Clause. However, even if P.A. 21-6 was not foreclosed by Supreme Court and Second Circuit precedent, it is constitutional because it is a neutral law of general applicability which is rationally related to a legitimate state purpose. Plaintiffs' second count, alleging a violation of the right to privacy and medical freedom, fails to state a claim because there is no overriding privacy right to decline vaccination. Count Three, alleging a violation of the

Equal Protection Clause, fails to state a claim because Plaintiffs do not plead facts that overcome the rationality of the state's classification. Count Four is dismissed because Plaintiffs allege a violation of the right to childrearing that is coextensive with its dismissed Free Exercise Clause count. Finally, Count Five, brought under IDEA, is dismissed because Plaintiffs failed to plead that they receive special education under IDEA.

## I. Facts Alleged

### A. Connecticut Public Act No. 21-6

Connecticut law requires students to receive immunization against certain communicable diseases before enrolling in school. Conn. Gen. Stat. § 10-204a(a).[1] Prior to April 28, 2021, students could apply for medical and religious exemptions to the immunization requirement. (Compl. ¶¶ 15-18; *see* Pl.'s Opp'n at 2-3). Under P.A. 21-6, students in kindergarten through grade twelve who had already received a religious exemption continue to be exempt from the vaccination requirement.[2] (Compl. ¶ 17.)

[1] § 10-204a(a) provides that:

> [e]ach local or regional board of education, or similar body governing a nonpublic school or schools, shall require each child to be protected by adequate immunization against diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B and any other vaccine required by the schedule for active immunization adopted pursuant to section 19a-7f before being permitted to enroll in any program operated by a public or nonpublic school under its jurisdiction. Before being permitted to enter seventh grade, a child shall receive a second immunization against measles.

[2] § 10-204a(b) provides that:

> The immunization requirements provided for in subsection (a) of this section shall not apply to any child who is enrolled in kindergarten through twelfth grade on or before April 28, 2021 if such child presented a statement, prior to April 28, 2021, from the parents or guardian of such child that such immunization is contrary to the religious beliefs of such child or the parents or guardian of such child, and such statement was acknowledged, in accordance with the provisions of sections 1-32, 1-34 and 1-35, by (1) a judge of a court of record or a family support magistrate, (2) a clerk or

Children in preschool or prekindergarten programs who previously claimed a religious exemption, however, must be vaccinated by September 1, 2022 or two weeks after transferring to another school program, whichever is later. (*Id.*; Ex. B, Compl., at 5.) No religious exemption is available to them. (Compl. ¶ 17.)

**B. Vaccinations**

Plaintiffs allege that there are ten identified vaccines that contain cell lines derived from aborted fetal cells. (*Id.* ¶¶ 20-23.) They further allege that vaccinations are harmful because the "presence of very small amounts of human fetal cells and DNA in the human blood can create a very strong autoimmune reaction in a person by which his [sic] body turns against itself and starts killing its own cells and tissues." (*Id.* ¶ 24.) They also assert that certain vaccines include animal cells and pork derivatives. (*Id.* ¶¶ 34, 39.)

**C. The Parties**

This case is brought by five plaintiffs: two associations and three individuals. The first associational plaintiff, We the Patriots USA, Inc. ("WTP"), is a nonprofit charity that is "dedicated to promoting constitutional rights and other freedoms" and seeks to "advanc[e] religious freedom, medical freedom, parental rights, and educational freedom for all." (*Id.* ¶ 2.) WTP states that "[a] significant number of its members are Connecticut parents affected by matters complained of herein." (*Id.*) The second associational plaintiff, CT Freedom Alliance, LLC ("Alliance"), is a public interest organization similarly committed to "advocating for religious freedom, medical freedom, parental rights, and educational freedom among others." (*Id.* ¶ 3.) Alliance asserts that "[m]ost of its members are parents affected by the legislation complained of herein." (*Id.*) Neither Associational Plaintiff identifies any individual member by name. (*See id.* ¶¶ 2-3.)

---

deputy clerk of a court having a seal, (3) a town clerk, (4) a notary public, (5) a justice of the peace, (6) an attorney admitted to the bar of this state, or (7) notwithstanding any provision of chapter 6, a school nurse.

Plaintiff Costantina Lora is a Connecticut resident with a child enrolled in preschool in Bethel, Connecticut. (*Id.* ¶ 25.) Her child previously received a religious exemption but will need to be vaccinated to enroll in kindergarten under P.A. 21-6. (*Id.* ¶ 30.) As a Greek Orthodox Christian, she objects to vaccinating her children because vaccines contain "aborted fetal cells," and she believes that injecting herself and her children with these cells "would constitute participation in what she feels was an act of intentional, premeditated murder." (*Id.* ¶ 27.) She also objects to the presence of cells from other animals and chemicals in vaccines, as she believes this is "morally wrong." (*Id.*) Further, she "personally hold[s] a general religious belief that harming children is morally wrong" and believes that vaccinating her children "would harm them, thus rendering it wrong." (*Id.* ¶ 28.)

Plaintiff Miriam Hidalgo is a Connecticut resident whose children will be subject to the vaccination requirement in Glastonbury, Connecticut. (*Id.* ¶ 31.) She is Catholic and believes that the use of "aborted fetal cells" in vaccines constitutes murder and violates her family's religious beliefs. (*Id.* ¶¶ 32-33.) She also objects to vaccines that contain the "cells of other animals," because as part of her religion, she raises her children as vegans. (*Id.* ¶ 34.)

Plaintiff Asma Elidrissi is a Connecticut resident with two children subject to P.A. 21-6's vaccination requirement. (*Id.* ¶ 36.) One child "has not fully completed registration for kindergarten" and the other "will be eligible for preschool in the fall of 2021." (*Id.*) Plaintiff Elidrissi is Muslim and alleges three religious objections to vaccines. (*Id.* ¶ 37.) First, she believes that vaccines constitute participation in murder because vaccines contain "aborted fetal cells." (*Id.* ¶ 38.) Next, she alleges that there are pork derivatives in vaccines, and she abstains from pork as a part of her religion. (*Id.* ¶ 39.) Finally, she does not harm children on religious and moral grounds and alleges that vaccines harm children. (*Id.* ¶ 40.) Plaintiff Elidrissi also states that after her son was given the measles, mumps,

and rubella vaccination, he "suffer[ed] serious symptoms and ultimately a speech and learning disorder for which he now receives special services." (*Id.*)

This case is brought against six defendants: three state agencies and three local boards of education. Defendants Connecticut Office of Early Childhood Development, Connecticut State Department of Education, and Connecticut Department of Public Health ("State Agency Defendants") are state agencies and move to dismiss all claims by the associational Plaintiffs and Counts One through Four under Rule 12(b)(1) for lack of subject matter jurisdiction and Counts One through Five under Rule 12(b)(6) for failure to state a claim. (State Agency Defs.' Mot. to Dismiss [Doc. # 22] at 1.) Defendants Bethel and Stamford Boards of Education join this motion [Doc. #23]. Defendant Glastonbury Board of Education moves to dismiss Counts One through Four, which are the counts directed against it [Doc. # 21].[3]

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where a court does not have statutory or constitutional power to adjudicate a claim, it lacks subject matter jurisdiction. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). The party asserting subject matter jurisdiction must prove

[3] The three school boards submit memoranda mirroring the State Agency Defendants without certain defenses. Defendants Bethel Board of Education and Stamford Board of Education do not assert Eleventh Amendment immunity [Doc. # 23]. Defendant Glastonbury Board of Education neither asserts Eleventh Amendment immunity nor responds to Count Five. (Mem. of Law in Supp. of Def. Glastonbury Board of Education's Mot. to Dismiss [Doc. # 21-1] at 1.) Because the school boards' memoranda mirror the State Agency Defendants' memorandum, the Court cites to the State Agency Defendants' memorandum ("Defs.' Mem.").

its existence by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Under Rule 12(b)(6), the Court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would plausibly show that the plaintiff is entitled to relief, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), assuming all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, *see Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). However, this principle does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because "only a complaint that states a plausible claim for relief survives a motion to dismiss," *Iqbal*, 556 U.S. at 679, a complaint must contain "factual amplification . . . to render a claim plausible," *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)), and a complaint that only "offers 'labels and conclusions'" or "naked assertions devoid of further factual enhancement" will not survive. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Discussion

### A. Eleventh Amendment Immunity

The State Agency Defendants seek to dismiss Counts One through Four against them, on grounds that they are shielded by sovereign immunity under the Eleventh Amendment as "arms of the state." (Defs.' Mem. at 6.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Eleventh amendment immunity was extended to suits brought against states by citizens of the same state, *see Papasan v. Allain*, 478 U.S. 265, 276

(1986); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890), and also includes a "state entity that is an 'arm of the [s]tate,'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). An agency is the arm of the state, and entitled to Eleventh Amendment immunity "where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." *Santiago v. N.Y. State Dept. of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991)). The Eleventh Amendment, however, is not without exception. Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine. *In re Deposit Ins. Agency*, 482 F.3d at 617.

The State Agency Defendants contend that the exceptions to sovereign immunity do not apply to Counts One through Four, because Congress has not abrogated the state's immunity, Connecticut has not consented to a waiver of immunity, and *Ex Parte Young* is inapplicable to state agencies. (Defs.' Mem. at 7.) While Plaintiffs "concede that Supreme Court precedent supports the State Agency Defendants' position and that the Court is bound to follow those positions," they nonetheless argue that the State Agency Defendants are not immune based upon a strict reading of the text of Eleventh Amendment. (Pls.' Opp'n at 8-9.)[4]

Because a state agency is considered an "arm of the state" and is entitled to immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), and this case does not present an exception to the state's Eleventh Amendment immunity, the State Agency Defendants are protected under the Eleventh Amendment and are immune from suit in Counts One through Four. Thus, these counts against Defendants Connecticut Office of Early Childhood Development, Connecticut State Department of Education, and

[4] In the alternative, Plaintiffs request leave to amend their complaint to name the agency officials as defendants. (Pls.' Opp'n at 9.)

Connecticut Department of Public Health are dismissed for lack of subject matter jurisdiction.[5]

**B. Standing**

Defendants argue that Plaintiffs WTP and Alliance fail to "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 496-97 (S.D.N.Y. 2020) (internal citations omitted).[6] They view the allegations that "[a] significant number of its members are Connecticut parents affected by the matters complained of herein," and "[m]ost of its members are parents affected by the legislation complained of herein" as insufficiently specific to confer standing to the associations. (*See* Defs.' Mem. at 9.) Plaintiffs concede that they did not specifically identify any members of their organizations that had standing in their complaint. (Pls.' Opp'n at 10.) They argue, but do not plead, that the three individual Plaintiffs, who each have individual standing to sue, are members of both WTP and Alliance, which they claim is implied in their complaint. (*Id.* ("It takes no great leap of logic for the Court to conclude, as implied, that Plaintiffs Lora, Hidalgo, and Elidrissi are members of both We The Patriots USA, Inc. and CT Freedom Alliance, LLC.").)

Standing requires an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (quoting *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 27 (D.C. Cir. 1990)). An association may sue on behalf of its members

[5] The Court denies Plaintiffs' request for leave to amend their Complaint to name the agency officials as defendants. The claim of Eleventh Amendment immunity was identified at the parties' pre-filing conference, and Plaintiffs declined the offered opportunity to amend their Complaint in anticipation of Defendants' motions to dismiss on this basis. Moreover, as discussed *infra*, since all counts will be dismissed, adding individual state officials in their official capacities would be futile.

[6] Defendants also argue that the associational Plaintiffs do not have standing to sue on their own behalf because they do not have their own redressable injury. (Defs.' Mem. at 8 n.9.) This is not rebutted by Plaintiffs. (*See* Pls.' Opp'n at 9-10.)

when it establishes that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004).

There is disagreement in the Second Circuit as to whether the first prong of the *Hunt* doctrine requires an association to identify, by name, a member with standing in its complaint. *Rodriguez*, 444. F. Supp. 3d at 496 n.3 (discussing split in the Second Circuit); *compare Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320 (2d Cir. 2020) ("Unless '*all* the members of an organization are affected by the challenged activity,' Plaintiff must name at least one of its 'affected members' to establish associational standing at the pleading stage." (internal quotations and citations omitted)), *with Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 227 (S.D.N.Y. 2019) ("While the organization need not identify any member with standing in his or her own right by name, it must nevertheless establish that 'at least one identified member ha[s] suffered or would suffer harm.'" (internal quotations and citations omitted)). However, at a minimum, a plaintiff must plead "facts that affirmatively and plausibly suggest" that an identified member has suffered harm. *Faculty v. N.Y. Univ.*, 11 F.4th 68, 75-76 (2d Cir. 2021) (internal quotations and citations omitted).

In *Faculty v. New York University*, the Second Circuit affirmed the dismissal of Plaintiff-Appellant Faculty, Alumni, and Students Opposed to Racial Preferences' ("FASORP") complaint for lack of standing because the association failed to demonstrate that its individual members had standing to sue. 11 F.4th at 71. There, the association pleaded that its members were subject to race and sex discrimination because New York University gave preference to "women and racial minorities" when selecting articles for its Law Review, an editorial board for its Law Review, and faculty for its Law School. *Id.* at 73. FASORP alleged that its members included "faculty members or legal scholars who have

submitted articles to the Law Review in the past, and who intend to continue submitting their scholarship to the Law Review in the future" and "individuals who have sought and applied for entry-level or lateral teaching positions at the Law School and intend to do so again the future, or remain potential candidates." *Id.* The Second Circuit concluded that such allegations were "plainly insufficient to show that FASORP's members have suffered the requisite harm" and noted that the associational plaintiff could have been more specific, asking: "When did FASORP's members submit articles or apply for jobs at NYU? Have those members drafted articles they intend to submit? If so, when do they plan to submit?" *Id.* at 76.

Here, Plaintiffs undeniably do not provide the names of individuals with standing in their complaint, and while Plaintiffs ask the Court to infer that three named individuals are members of the associations, "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he [or she] is a proper party to invoke judicial resolution of the dispute," *Warth v. Seldin*, 422 U.S. 490, 490 (1975), and "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings," *Steinberger v. Lefkowitz*, 634 F. App'x 10, 12 (2d Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Further, the allegations that "[a] significant number of its members are Connecticut parents affected by the matters complained of herein," and "[m]ost of its members are parents affected by the legislation complained of herein" are insufficient to demonstrate that identified members were subject to harm. *See Faculty*, 11 F.4th at 76. The Associational Plaintiffs do not detail, for example, the school districts or grade level of these members' children or whether these members have previously sought a religious exemption. Further, the Associational Plaintiffs do not provide facts detailing how their members would be "affected by the legislation" such that they would suffer harm.

Since the Associational Plaintiffs have failed to plead facts demonstrating that at least one identified member had or would suffer harm, they lack standing and Counts One through Five brought by them are dismissed for lack of jurisdiction.

### C. Count One: Free Exercise Clause

Individual Plaintiffs allege that the P.A. 21-6 violates their right to free exercise of religion under the First Amendment as the Act provides a medical exemption to its vaccination requirement without providing a religious exemption. (Compl. ¶¶ 42-51.) Plaintiffs argue that the failure to provide a religious exemption "forces parents to either renounce their religious beliefs and vaccinate their children or homeschool their children—something that many parents cannot do—thus depriving them of any education opportunities." (Compl. ¶ 50.)

The First Amendment, applicable to the states through the Fourteenth Amendment, "declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); U.S. Const. amend. I. It "embraces two concepts": the "freedom to believe" and the "freedom to act." *Cantwell*, 310 U.S. at 303. While the freedom to believe is "absolute," the freedom to act "cannot be." *Id.* at 304; *see also Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes.)'" (citations omitted)).

There are two standards of review to a challenge based on the Free Exercise Clause—rational basis and strict scrutiny. *Cent. Rabbinical Cong. of the United States & Canada v. N.Y. City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 186 n.2 (2d Cir. 2014). Under rational basis review, "legislation is presumed to be valid and will be sustained if the [burden imposed] by the statute is rationally related to a legitimate state interest." *Id.* (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007)). Strict

scrutiny requires that the law "be justified by a compelling government interest and . . . be narrowly tailored to advance that interest." *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)).

Defendants contend that the Court does not need to decide which level of scrutiny to use as Plaintiffs' Free Exercise claim is foreclosed by Second Circuit and Supreme Court precedent. (Defs.' Mem. at 11.) They alternatively argue that P.A. 21-6 survives both rational basis and strict scrutiny review. (*Id.*) Plaintiffs maintain that there is no "public health exception to the First Amendment," and thus, P.A. 21-6 must be reviewed under strict scrutiny. (Pls.' Opp'n at 11-23.)

*1. Second Circuit and Supreme Court Precedent*

Over a century ago, the United States Supreme Court in *Jacobson v. Massachusetts* rejected a Fourteenth Amendment challenge to Massachusetts's mandatory vaccination law. 197 U.S. 11, 12 (1905). While *Jacobson* did not address the First Amendment, which had not yet been applied to the states, the Supreme Court concluded that the law "did not invade[] any right secured by the Federal Constitution." *Jacobson*, 197 U.S. at 38. The Supreme Court later instructed that *Jacobson* "settled that it is within the police power of a state to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176 (1922). Subsequently, when the Supreme Court was called to decide if a child labor law violated the First Amendment in *Prince v. Massachusetts*, it considered the limitations of the rights of religion and parenthood, and stated in dicta that a parent could not "claim freedom from compulsory vaccination for the child more than for himself on religious grounds." 321 U.S. 158, 166 (1944) (citing *Jacobson*, 197 U.S. at 25).

With this jurisprudential backdrop, the Second Circuit affirmed the dismissal of a Free Exercise challenge to a New York statute requiring students to be vaccinated to attend public school and a regulation which allowed unvaccinated students to be temporarily excluded from school during an outbreak of a "vaccine-preventable disease." *Phillips*, 775

F.3d at 540-41. The plaintiffs in *Phillips* argued that the statute and regulation infringed on their free exercise of religion as Catholics. *Id.* at 541-42. Analyzing *Jacobson* and *Prince*, the Second Circuit concluded that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." *Id.* at 543. While New York's mandatory vaccination law contained both religious and medical exemptions, the court noted that New York law goes "beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs." *Id.* As the state could bar the unvaccinated "children from school altogether," the Second Circuit concluded that a "limited exclusion during an outbreak of a vaccine-preventable disease" was constitutional. *Id.*

Defendants argue that federal courts have "uniformly rejected free exercise challenges to mandatory school vaccination laws." (Defs.' Mem. at 13); *see, e.g.*, *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) (holding that district court did not err in granting summary judgment because West Virginia's mandatory vaccination program for school admission did not violate the Free Exercise Clause under strict scrutiny); *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1085-87 (S.D. Cal. 2016) (denying a motion for a preliminary injunction because the parents challenging a bill that repealed a religious exemption to the state's vaccination requirement for new school children were unlikely to succeed on the merits of their claim that the bill violated the Free Exercise Clause, the Equal Protection Clause, or the right to education under the California Constitution); *W.D. v. Rockland Cnty.*, 521 F. Supp. 3d 358, 409-10 (S.D.N.Y. 2021) (granting the defendants' motion for summary judgment and finding as a matter of law that excluding vaccinated children from school during a measles outbreak did not violate the Free Exercise Clause). Defendants urge dismissal of Plaintiffs' claims for failure to state a claim under the Free Exercise clause.

Plaintiffs present three arguments on why this precedent does not foreclose their Free Exercise claim. (Pls.' Opp'n at 11.) They assert that "even during a public health emergency the First Amendment's prohibition on the attachment of special disabilities to religion still applies in full force," citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) and *Harvest Rock Church, Inc. v. Newson*, 141 S. Ct. 889 (2020). (*Id.*) Next, they view *Jacobson* and *Zucht* as distinguishable because they did not involve the Free Exercise Clause and the decision in *Prince* was limited to the facts of the case. (*Id.* (citing *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 70 (Gorsuch, J., concurring).) Finally, to the extent that *Jacobson* does establish that vaccine mandates are permissible under the state's police power, Plaintiffs conclude that the "Second Circuit's reliance on it and *Zucht* in *Phillips* errs," and this Court should not follow *Phillips*. (*Id.*)

In *Roman Catholic Diocese of Brooklyn*, the Supreme Court enjoined the Governor of New York from enforcing his "severe restrictions on the applicants' religious services" where an Executive Order limited attendance at religious services in certain areas of New York during the COVID-19 pandemic while not imposing the same restrictions on secular businesses. 141 S. Ct. at 66, 69. Concluding that the restrictions were neither "neutral" nor of "generally applicability," the Supreme Court determined that the applicants were likely to succeed on the merits of their claim under strict scrutiny because "other less restrictive rules could be adopted." *Id.* at 67. Justice Neil Gorsuch concurred, positing that "*Jacobson* hardly supports cutting the Constitution loose during a pandemic. That decision involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction." *Id.* at 70. Similarly, the Supreme Court in *Harvest Rock Church, Inc. v. Newson* granted injunctive relief where the Governor of California restricted attendance at in-person worship services during the COVID-19 pandemic and remanded the case for "further consideration in light of *Roman Catholic Diocese of Brooklyn.*" 141 S. Ct. at 889.

This Court recognizes that these cases reaffirm the proposition that when considering public health, "the Constitution cannot be put away and forgotten." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68; *see Harvest Rock Church, Inc.*, 141 S. Ct. at 889. While Plaintiffs argue that "a public health interest does not swallow the First Amendment," (Pls.' Opp'n at 11), Plaintiffs miss the point. *Roman Catholic Diocese of Brooklyn* enjoined officials from enforcing an Executive Order which "single[d] out houses of worship for especially harsh treatment" and failed to narrowly tailor its requirements, 141 S. Ct. at 65-67, but it does not stand for Plaintiffs' broad proposition that there is no "public health exception to the First Amendment." (Pls.' Opp'n at 11.) Rather, states cannot violate the First Amendment, *see Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68, and "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." *Phillips*, 775 F.3d at 543.[7]

The Court further acknowledges that *Jacobson* and *Zucht* do not involve challenges under the Free Exercise Clause, *see id.* ("*Jacobson* does not specifically control [Plaintiffs'] free exercise claim" as it did not involve a First Amendment challenge); *Zucht*, 260 U.S. at 176 (San Antonio's vaccine mandate did not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment), and that *Prince* was expressly limited to its facts, *Prince*, 321 U.S. at 171 ("Our ruling does not extend beyond the facts the case presents."). However, as viewed by the Second Circuit, the reasoning in these cases—despite their limitations—suggests that vaccination as a condition of school admission does not violate the Free Exercise clause because they are "consonant with [Supreme Court and Second Circuit] precedent holding that 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect

---

[7] Professor John Fabian Witt documents a "long tradition of judicial decisions upholding state authority to fight pandemics" in *American Contagions: Epidemics and the Law from Smallpox to COVID-19. See* John Fabian Witt, *American Contagions: Epidemics and the Law from Smallpox to COVID-19* 60 (2020).

of burdening a particular religious practice.'" *Phillips*, 775 F.3d at 543 (quoting *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 531); *see also Workman*, 419 F. App'x at 353-54.

In viewing *Phillips* as wrongly decided, Plaintiffs set out a history of the Fourteenth Amendment which they argue demonstrates that *Jacobson* cannot be squared with modern constitutional jurisprudence. (Pl.'s Opp'n at 15.) As an example, Plaintiffs examine *Lawrence v. Texas*, 539 U.S. 558 (2003), which held that the criminalization of same-sex sexual conduct was unconstitutional, and argue that if *Jacobson* were controlling law, a state would be allowed to "criminalize homosexual intimacy" to curb the spread of HIV/AIDs. (*Id.*)

However, Plaintiffs' arguments do not provide a basis for the Court to ignore Second Circuit precedent. In another case brought by WTP, the Second Circuit considered challenges to an emergency rule requiring healthcare workers to receive a COVID-19 vaccine with no religious exemptions. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d. Cir. 2021). In denying their application for a preliminary injunction, the Second Circuit stated that WTP's "alternative contention that *Jacobson* and *Phillips* have been implicitly overruled by the Supreme Court likewise finds no support in caselaw." *Id.* at 293.[8] The Second Circuit in *Phillips* was certainly aware of the evolution of the Fourteenth Amendment and nonetheless concluded that mandatory vaccination as a condition to school enrollment did not violate the Free Exercise Clause based on *Jacobson* and *Prince*. *Phillips*, 775 F.3d at 543. Because religious exemptions to vaccine mandates "go[] beyond what the Constitution requires," *see id.*, Connecticut's decision to eliminate religious exemptions does not alter this conclusion. Accordingly, Plaintiffs fail to state a claim for relief under the Free Exercise Clause. *Id.* However, even if Plaintiffs' claim was not foreclosed, P.A. 21-6 would only be subject to rational basis review, which it survives.

[8] We the Patriots USA's application for injunctive relief in this case was subsequently denied by the Supreme Court. *We the Patriots USA, Inc. v. Hochul*, --- S. Ct. ---, 2021 WL 5873122 (2021).

*2. Rational Basis*

A court will sustain a "religiously neutral and generally applicable law [that] incidentally burdens free exercise rights" if it is "rationally related to a legitimate government interest." *Does 1-6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021) (affirming the denial of a preliminary injunction because petitioners were unlikely to succeed on the merits of their claim that Maine's mandatory vaccination law for healthcare workers, which did not offer a religious or philosophical exemption, violated the Free Exercise clause). Plaintiffs contend that Supreme Court cases from this past term compel the conclusion that P.A. 21-6 is not "generally applicable" after *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) and *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).

*a. Neutrality*

A law is neutral when it does not target religion or religious practices. *Cent. Rabbinical Cong. of the United States*, 763 F.3d at 193; *Fulton*, 141 S. Ct. at 1877 ("Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.").

By its terms, P.A. 21-6 does not target religion or "single out [religion] for especially harsh treatment." *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. 63. Instead, the law requires all students to receive common vaccinations, exempting those with medical exemptions and those in grades kindergarten through twelve with existing religious exemptions. "The absence of a religious exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required." *See We the Patriots USA, Inc.*, 17 F.4th at 282 (finding that a challenge to an emergency rule requiring healthcare workers to receive the COVID-19 vaccine without religious exemption was unlikely to succeed on the merits because the rule was neutral and generally applicable). Plaintiffs have not advanced an argument that P.A. 21-6 was motivated by any religious animus and the legislative history suggests, as Defendants argue, that the enactment of this

law was based upon declining student vaccination rates. *See* Conn. H.R. (Apr. 19, 2019) (statement of Repr. Steinberg) ("The key data describe a clear trend over the past decade towards higher levels of religious exemptions resulting in as many as a hundred schools at any given time with vaccination rates below the community immunity threshold."); *see also* Conn. S. (Apr. 27, 2021) (statement of Senator Daugherty Abrams) ("We have over 30 schools that have religious exemption rates over 10%, some as high as 25%. So when you hear that our vaccination rates in Connecticut are high, remember that those figures are overall and do not reflect the significant vulnerability present in our schools and communities.")[9] (Defs.' Mem. at 17-18.) As such, P.A. 21-6 is neutral.

*b. General Applicability*

Plaintiffs contend that the law cannot be considered "generally applicable" as it "provides for secular exemptions (medical) from its vaccination mandate while completely eliminating religious exemption." (Pls.' Opp'n at 18.) They argue that medical exemptions and religious exemptions are "comparable" under the First Amendment and predict that the law invites the state to provide impermissible individualized exemptions under *Fulton*. (Pl.'s Opp'n at 18.)

A law is generally applicable when it does not selectively "impose burdens only on conduct motivated by religious belief." *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 543. If a law "treat[s] *any* comparable secular activity more favorably than religious exercise," then it is not generally applicable. *Tandon*, 141 S. Ct. at 1296. Further, a law is not generally applicable if it "'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884).

[9] In fact, Plaintiffs have not offered a clear argument on how the law is not neutral in any respect. Instead, they have conflated their analysis of neutrality and general applicability.

### i. Comparable Secular Activity

In *Tandon v. Newsom*, the Supreme Court reasoned that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." 141 S. Ct. at 1296. Additionally, the Supreme Court held in *Smith* that "a law criminalizing controlled substance possession was deemed generally applicable even though it contained an exception for substances prescribed for medical purposes." *We the Patriots, Inc.*, 17 F.4th at 285 (citing *Smith*, 494 U.S. at 874, 878-82).

At oral argument, the Defendants maintained that Connecticut's interest in P.A. 21-6 was to "protect the health and safety of Connecticut's schoolchildren." (*See* Defs.' Mem. at 20.) They maintain that medical and religious exemptions differ because medical exemptions further the state's interest in health and safety while religious exemptions undercut that same interest. Plaintiffs contend that the Defendants' interest is drawn too broadly, and instead, the legislative history suggests that the asserted interest is "preventing the spread of contagious disease." (Pl.'s Opp'n at 19.) With this narrower interest, Plaintiffs assert that the medical exemptions undermine Connecticut's statutory purpose, as an individual unvaccinated for religious reasons and an individual unvaccinated for medical reasons pose the same risk. (*Id.*) In enacting P.A. 21-6, however, the state legislators identified that the purpose of this law is to protect community health[10] and Plaintiffs make no showing that this interest is pretextual or unwarranted.

---

[10] *See e.g.*, Conn. H.R. (Apr. 19, 2019) (statement of Repr. Steinberg) ("Vaccine hesitancy is becoming a direct and serious threat to the public health. It demands a proactive approach, not a reactive one dependent on quarantines or contact tracing. We've seen how that's gone. We need to act and act before we have an epidemic, an epidemic that we can prevent. That's what we're here for today."); *see also* Conn. S. (Apr. 27, 2021) (statement of Senator Daugherty Abrams) ("Why this Bill now? It is our obligation to protect the public health.).

Plaintiffs' reliance on *Tandon* does not lead this Court to a different conclusion. In *Tandon*, the Supreme Court concluded that the petitioners were likely to succeed on their Free Exercise challenge to California's restrictions on the number of households that could gather for in-home religious worship. 141 S. Ct. at 1297-98. California did not impose similar restrictions on secular activities. *Id. Tandon*, however, "did not involve a one-to-one comparison of the transmission risk posed by an individual worshiper and, for example, an individual grocery shopper," and instead looked at the risk of groups. *We the Patriots, Inc.*, 17 F.4th at 287; *see Tandon*, 141 S. Ct. at 1297. While "[c]omparability is concerned with the risks various activities pose," here, when considering the risk of the group, religious exemptions and medical exemptions are not comparable. As data attached to Plaintiffs' complaint show, 2.3% of kindergarteners have a religious exemption to the Connecticut's vaccine requirements while only 0.2% of kindergarteners have a medical exemption. (Ex. D, Pl.'s Compl. [Doc. # 1-4] at 3-5.) "We doubt that, as an epidemiological matter, the number of people seeking exemptions is somehow excluded from the factors that the [s]tate must take into account in assessing the relative risks to the health of the [impacted community] and the efficacy of its vaccination strategy in actually preventing the spread of the disease." *We the Patriots, Inc.*, 17 F.4th at 287.

Further, medical exemptions are not comparable to religious exemptions when considering the "interest that justifies the regulation at issue." *Tandon*, 141 S. Ct. at 1296. The state has an interest in protecting the health of Connecticut's schoolchildren. Medical exemptions further this interest by ensuring that children are not harmed by vaccines that are contraindicated. *See Does 1-6*, 16 F.4th at 31 (concluding that a medical exemption to a vaccine mandate for healthcare workers would not undermine Maine's interests in protecting the health of healthcare professionals, those who cannot be vaccinated, and of all Mainers because "providing healthcare workers with medically contraindicated vaccines would threaten the health of those workers and thus compromise both their own

health and their ability to provide care"). Connecticut has chosen to protect the safety of schoolchildren by requiring all students who may be safely vaccinated to be vaccinated, exempting those in grades kindergarten through twelve with existing religious exemptions, and this same interest is not advanced by an overarching religious exemption which jeopardizes the community immunity.

**ii. Individualized Exemptions**

"General applicability may be absent when a law provides 'a mechanism for individualized exemptions,' because it creates the risk that administrators will use their discretion to exempt individuals from complying with the law for secular reasons, but not religious reasons." *We the Patriots, Inc.*, 17 F.4th at 288 (quoting *Smith*, 494 U.S. at 884) (citations omitted); *see also Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 542 ("All laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice."). In *Smith,* the Court considered an exemption that was granted for "good cause" as an example of such "individualized exception." 494 U.S. at 884. Similarly, in *Fulton*, a city official was able to create exemptions in his or her "own discretion," which was violative of the general applicability framework. *Fulton*, 141 S. Ct. at 1878-79.

P.A. 21-6 allows individuals to receive medical exemptions, but this categorical exemption is not a "mechanism for individualized exemptions." *Smith*, 494 U.S. at 884. The Act, instead, "provides for an objectively defined category of people to whom the vaccine requirement does not apply," *We the Patriots, Inc.*, 17 F.4th at 289, and requires a certificate from a "physician, physician assistant or advanced practice registered nurse stating that in the opinion of such physician, physician assistant or advanced practice registered nurse such immunization is medically contraindicated because of the physical condition of such child." P.A. 21-6 § 1(a). "[N]o case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable." *Does 1-6*, 16 F.4th at 30. P.A. 21-6

affords government officials no discretion[11] to grant or deny exemptions and the existence of a medical exemption thus does not render the law not generally applicable. *See We the Patriots, Inc.*, 17 F.4th at 289-90.

Plaintiffs' reliance on *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) is unavailing. There, the court determined that the police department's regulation on beards, which provided medical but not religious exemptions to its policy on facial hair, was subject to heightened scrutiny. *Id.* at 365-66. The police department's interest was in a "uniform appearance," and the decision "to allow officers to wear beards for medical reasons undoubtedly undermine[d] the Department's interest in fostering a uniform appearance through its 'no-beard' policy." *Id.* at 366. Here, Connecticut's interest in P.A. 21-6 is to "protect the health and safety of Connecticut's schoolchildren." (Defs.' Mem. at 20.) The decision to exempt individuals from the vaccine requirement for medical reasons does not undermine its interest, as Connecticut would not be protecting the health and safety of schoolchildren if it required these children to undergo medically contradicted treatment. *See Does 1-6*, 16 F.4th at 34 (concluding that the medical exemption in *Fraternal Order* was distinguishable from Maine's vaccine mandate with a medical exemption because "medical exemptions support Maine's public health interests" by not forcing its healthcare workers to undergo contraindicated medical treatment). Because medical exemptions do not undermine Connecticut's interest, *Fraternal Order* is unpersuasive authority for Plaintiffs' argument.

*c. Plaintiffs' Alternative Arguments*

Contending that rational basis review cannot apply to P.A. 21-6, Plaintiffs raise two alternative arguments. First, they opine that the Connecticut vaccine requirement presents a "hybrid-rights situation" under *Smith* which forestalls the application of rational basis

---

[11] Those that present a certificate from a physician, physician assistant or advanced practice registered nurse stating that a vaccine is "medically contraindicated . . . shall be exempt from the appropriate provisions of this section." Conn. Gen. Stat. § 10-204a(a)(2).

review. (Pl.'s Opp'n at 20.) In *Smith*, the Supreme Court noted that the neutral, general applicability framework may be inappropriate for certain "hybrid situation[s]" where a Free Exercise Clause challenge is brought "in conjunction with other constitutional protections," such as the rights of parents. 494 U.S. at 881-82. Plaintiffs maintain that they have established a "hybrid right" because their Free Exercise Clause challenge is brought in conjunction with their constitutionally protected parental rights claim, so the Court should apply strict scrutiny. (Pls.' Opp'n at 21.) The Second Circuit has concluded that *Smith*'s "language relating to hybrid claims is dicta and not binding on this court," *Knight v. Conn. Dept. of Public Health*, 275 F.3d 156, 167 (2d Cir. 2001), and held that a stricter standard of review should not be used to analyze hybrid claims. *Leebaert v. Harrington*, 332 F.3d 134, 143 (2d Cir. 2003) ("'[A]t least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard' to evaluate hybrid claims." (quoting *Kissinger v. Bd. of Trs. of the Ohio State Univ., Coll. of Veterinary Med.,* 5 F.3d 177 (6th Cir.1993))).

Plaintiffs concede that the Second Circuit has refused to apply strict scrutiny to hybrid claims but contend that this "Court must follow Supreme Court precedent before it follows Second Circuit precedent." (Pls.' Opp'n at 20.) Because the language in *Smith* "is dicta and not binding on this court," *see Knight*, 275 F.3d at 167, Plaintiffs' reasoning is misplaced. This Court will adhere to Second Circuit precedent which does not support a heightened level of scrutiny based on a hybrid-rights theory. *See Leebaert*, 332 F.3d at 144.

Plaintiffs also assert that that *Smith*'s neutrality and general applicability framework cannot be squared with the text and history of the First Amendment, so the Court should not apply this framework. (*Id.* at 20-21.) However, the Court is bound by *Smith*'s neutrality and general applicability framework and lacks authority to deviate to apply strict scrutiny to P.A. 21-6 based solely on what Plaintiffs view as a "historically and textually faithful

constitutional analysis." (*Id.* at 21); *see In re United States v. Manzano*, 945 F.3d 616, 627 (2d Cir. 2019).

*d. Application of Rational Basis Review*

When a law is neutral and of generally applicability, "it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practice." *Fifth Ave. Presbyterian Church v. City of N.Y.,* 293 F.3d 570, 574 (2d Cir. 2002). Rational basis review requires only that the law "be rationally related to a legitimate state interest," *Lange-Kessler v. Department of Educ.*, 109 F.3d 137, 140 (2d Cir. 1997), and as long as there is a rational basis for the Act, the law must be upheld, *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). Plaintiffs "have the burden to negat[e] every conceivable basis which might support" the law. *Id.* at 315.

The state has a legitimate interest in protecting the public health of the community. At oral argument, Plaintiffs conceded that the state's interest was not only legitimate, but also compelling. *See also Workman*, 419 F. App'x at 352. The Act is rationally related to this interest, where the number of religious exemptions sought has increased, impacting the safety of herd immunity. (Defs.' Mem. at 33 ("[T]he percentage of incoming kindergarten students claiming religious exemptions had been increasing almost every year since 2012 . . . [and] it was reasonable for the legislature to have believed that that trend was likely to continue, and that children then-enrolled in pre-K would claim more religious exemptions . . . ."); *see also* Ex. D, Pls.' Compl. [Doc. # 1-4] at 4.) The decision to allow medical exemptions but not religious exemptions does not render the law irrational, as medical exemptions further the health of schoolchildren by not requiring the vaccination of children for whom vaccinations are contraindicated. (*See* Pls.' Compl. at ¶ 47.) Since Plaintiffs do not plead facts from which an inference can be drawn that the law lacks any legitimate purpose, P.A. 21-6 withstands rational basis review.

**D. Count Two: Medical Freedom and Privacy**

Plaintiffs complain that P.A. 21-6 violates their rights to privacy and medical freedom under the First, Fourth, Fifth and Fourteenth Amendment. (Compl. ¶¶ 53, 56.) At oral argument, however, Plaintiffs clarified that this right is housed under a Fourteenth Amendment liberty or privacy theory and will be analyzed as such. *See We the Patriots, Inc.*, 17 F.4th at 293 n.34 (concluding that WTP was unlikely to succeed on the merits of their claim asserting a right to privacy, medical freedom, and bodily autonomy and noting that WTP did "not make any particularized argument for why the fundamental rights they assert may be implicated by constitutional provisions other than the Fourteenth Amendment").

The Supreme Court and the Second Circuit both have held that the "Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *Id.* at 293 (citing *Jacobson*, 197 U.S. at 25-31, 37; *Phillips*, 775 F.3d at 542-43.) In light of the Second Circuit's recent reliance on *Jacobson*, Plaintiffs' contention at oral argument that it is outdated and nonbinding lacks force here. *Id.* at 293 n.35, 294 ("*Jacobson* remains binding precedent.").

While Plaintiffs' argument that their privacy right to decline vaccination for themselves and their children is supported by *Roe v. Wade*, 410 U.S. 113, 152-53 (1973), *Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992), and *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925), (Pls.' Opp'n at 23-24), these cases do not establish such a broad privacy right to refuse vaccination, and "[t]his Court cannot find an overriding privacy right when doing so would conflict with *Jacobson*." *We the Patriots, Inc.*, 17 F.4th at 293 n.35 (rejecting WTP's argument that *Roe*, *Planned Parenthood*, and *Lawrence v. Texas*, 539 U.S. 558 (2003) established "a broad fundamental privacy right for all medical decisions").

The Court concludes that Plaintiffs' medical freedom and privacy claim must be dismissed for failure to state a claim.

**E. Count Three: Equal Protection Clause**

Plaintiffs argue that P.A. 21-6 violates the Equal Protection Clause because the Act "creates age-based classes on who may continue to exercise their religious beliefs while still availing themselves of an education" and denies an educational benefit to individuals who do not "waive their religious identity while affording the same benefit to parents and children who assert a medical exemption." (Compl. ¶ 60-61.)

The Equal Protection Clause requires that no state "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. To demonstrate that an individual's right to equal protection has been violated, a movant must show that he or she was "selectively treated compared with other similarly situated [individuals], and that selective treatment was based on impermissible considerations such as . . . religion." *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). When reviewing an Equal Protection claim, courts apply rational basis review where there is an absence of intentional discrimination or where the "classification at issue does not implicate a suspect class." *See W.D.*, 521 F. Supp. 3d at 410 (citing *Vance v. Bradley*, 440 U.S. 93, 96-97 (1979)) (granting the defendants' motion for summary judgment and finding as a matter of law that excluding vaccinated children from school during a measles outbreak did not violate the Equal Protection Clause by treating religious individuals differently from those with medical exemptions and treating those under eighteen differently than those over the age of eighteen).

Plaintiffs acknowledge that "age is not a suspect classification on its own for Fourteenth Amendment Equal Protection clams," but assert that "[w]hen a state's age-based classification burdens the exercise of a fundamental right . . . the Fourteenth

Amendment requires courts to employ strict scrutiny." (*Id.* at 26.) Given that this Court has concluded that Plaintiffs failed to state a claim under the Free Exercise Clause, no strict scrutiny is applied. *See W.D.*, 521 F. Supp. 3d at 410 ("[W]here a law subject to an equal protection challenge 'does not violate [a plaintiff's] right of free exercise of religion,' courts do not 'apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test'") (quoting *A.M. ex rel. Messineo v. French*, 431 F. Supp. 3d 432, 447 (D. Vt. 2019)); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83, (2000) ("[A]ge is not a suspect classification under the Equal Protection Clause.").

When conducting rational basis review at the motion to dismiss stage, "a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality that applies to government classifications." *Progressive Credit Union v. City of N.Y.*, 889 F.3d 40, 49-50 (2d Cir. 2018). "A court is not confined to the particular rational or irrational purposes that may have been raised in the pleadings." *Id.* Survival of Plaintiffs' equal protection claim thus depends on whether Plaintiffs have asserted facts demonstrating that the government's actions were irrational. *See W.D.*, 521 F. Supp. 3d at 410 (quoting *A.M. ex rel. Messineo*, 431 F. Supp. 3d at 447).

Plaintiffs have failed to make such a showing. Plaintiffs' complaint asserts that P.A. 21-6 "singles out religious beliefs for less favorable treatment under the law and creates age-based classes on who may continue to exercise their religious beliefs while still availing themselves of an education." (Compl. ¶ 64.) However, allowing children in grades kindergarten through twelve to keep "existing religious exemptions" to "protect the expectation interests of their parents, who had relied on the prior version of [the Act] when making decision about how to educate their children" is not irrational. (*See* Defs.' Mem. at 32-33.) At oral argument, Plaintiffs asserted that it was plainly irrational for Defendants to believe that public health will be undermined by a narrow class of preschoolers but not be impacted by the larger class of unvaccinated students who keep their religious exemptions.

But Plaintiffs focus on a specific moment in time. The class of unvaccinated students who may keep their religious exemptions will diminish as the students graduate, allowing the state to reduce the number of unvaccinated students, protect the public's health, and balance the expectation interests of parents with currently enrolled students. (*See* Ex. D, Pls.' Compl. [Doc. # 1-4] at 4 (demonstrating that the number of religious exemptions in kindergarteners has increased 0.9% overall since 2012-2013).) This consideration does not make the state's action irrational in the Court's view. Plaintiffs also plead that P.A. 21-6 allows medically exempted children to attend school while denying that benefit to children whose parents will "not waive their religious identity." (Compl. ¶ 60.) As discussed above, medical exemptions protect the health of individuals for whom vaccinations are contraindicated, and do not negate the state's presumption of rationality.[12] As Plaintiffs fail to plead facts demonstrating the irrationality of the state's actions, Count Three is dismissed for failure to state a claim.

### F. Count Four: Fourteenth Amendment Right to Childrearing

In Count Four, Plaintiffs claim that P.A. 21-6 violates the Fourteenth Amendment's protection of a parent's fundamental interest in the "care, custody, and control of their children" in deciding what is best for their child's health. (Compl. ¶¶ 63-64 (citing *Troxel v. Granville*, 530 U.S. 57 (2000).) Count Four is coextensive with the Plaintiffs' Free Exercise claim. (*See* Defs.' Mem. at 34-35; Pl.'s Opp'n at 30); *see also Prince*, 321 U.S. at 164 n.8 (concluding that appellant's parental rights claim "as made and perhaps necessarily, extends no further than that to freedom of religion, since in the circumstances all that is comprehended in the former is included in the latter").

[12] In Plaintiffs' Opposition, they advance the additional argument that "every child currently enrolled in kindergarten through grade 12 with a religious exemption poses the same 'danger' that the Plaintiffs' children supposedly do, and they will continue to pose that 'danger' for another decade." (Pls.' Opp'n at 29.) Even if pleaded, this argument does not demonstrate that P.A. 21-6 is irrational under the same analysis above.

Plaintiffs rely on *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925), and *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) to "clearly establish that the Plaintiffs possess a fundamental right to control and otherwise direct the upbringing of their children, including opting to decline a medical treatment that violates their faith." (Pl.'s Opp', at 31-32.) In *Pierce,* the Supreme Court affirmed a preliminary injunction precluding enforcement of a statute requiring children in Oregon to attend public school, finding that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control." 268 U.S. at 534-35. In *Troxel*, the Supreme Court invalidated a Washington state statute which allowed "'[a]ny person' to petition a superior court for visitation right 'at any time' . . . whenever 'visitation may serve the best interest of the child,'" 530 U.S. at 60, because the statute "failed to provide any protection for [the] fundamental constitutional right to make decisions concerning the rearing" of a child. *Id.* at 69-70. While *Troxel* recognized that parents have an interest in the "care, custody, and control of their children," the "scope of that right [was left] undefined." *Leebaert*, 332 F.3d at 141-42 (concluding that parents did not enjoy a fundamental right to "tell a public school what his or her child will and will not be taught"). The Second Circuit also observed that *Yoder*, where the Supreme Court invalidated a compulsory high-school attendance law in response to complaints by Amish parents "took pains explicitly to limit its holding" based on the record before it and the religious culture of the Amish." *Id.* at 144-45.

Because Plaintiffs' parental rights challenge is contingent on the viability of their Free Exercise challenge, which the Court has dismissed, Plaintiffs have failed to state a claim under the Fourteenth Amendment for the broad fundamental right of child rearing that they assert.

### G. Count Five: Individuals with Disabilities Education Act

Plaintiffs allege unlawful discrimination in violation of IDEA. (Compl. at 12.) They request a declaratory judgment that P.A. 21-6 violates IDEA, that IDEA preempts P.A. 21-6, and that IDEA "requires the Defendants to provide disabled children with a free appropriate public education in the least restrictive environment possible even if their parents decline to vaccinate them because of their religious beliefs." (Compl. at 14.) Their Complaint represents that Plaintiff Elidrissi's oldest child "is disabled within the meaning of IDEA" because he "suffer[s from] a speech and learning disorder for which he now receives special services." (Compl. ¶¶ 4, 71.) Defendants maintain that this is insufficient to establish that Plaintiff Elidrissi's child is a "child with a disability" under IDEA. (Defs.' Mem. at 36.)

Under 20 U.S.C. § 1401(3)(a), a "child with a disability" includes a child with a (1) "speech or language impairment[]" (2) "who, by reason thereof, needs special education and related services." Speech or language impairments are further defined in 38 C.F.R. 300.8(a)(1) as a "communication disorder, such as stuttering, impaired articulation, a language impairment, or voice impairment, that adversely affects a child's educational performance." A child that requires only services, but not "special education" does not qualify as a "child with a disability" under IDEA. *See* 38 C.F.R. 300.8(a)(2); *see also Marshall Joint Sch. Dist. No. 2 v. C.D.*, 616 F.3d 632, 641 (7th Cir. 2010) ("The law is perfectly clear on this point: if a child has a health problem 'but only needs a related service and not special education, the child is not a child with a disability.'"). Special education is a type of "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29); *see also Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, (2d Cir. 2002) (reversing the district court's dismissal of an IDEA claim where the complaint alleged that the child had "other health impairments" which limited her

"strength vitality and alertness" and required "special education and related services" in the form of homeschooling).

While Plaintiffs state that the child has "speech and learning disorders," they allege only that this child receives "special services" and not "special education." (Compl. ¶ 40.) At oral argument Plaintiffs acknowledged that failing to include the child's eligibility for special education may have been a defect in the complaint but asserted that the claim could withstand a motion to dismiss with all inferences drawn in their favor. However, absent any factual basis to infer that the child's condition could fall under the regulatory definition of a "child with a disability" and not just a "speech and learning disorder for which he needs special services," Plaintiffs have not demonstrated that they are entitled to relief. *See Twombly*, 550 U.S. at 577. Plaintiffs' allegation that Plaintiff Eldrissi's child "is disabled within the meaning of IDEA" is nothing more than a "naked assertion[] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557), and fails to give any factual basis for the conclusion that the child requires special education. *See* 38 C.F.R. 300.8(a)(2) (mandating that a child with a covered disability that "only needs a related service and not special education . . . is not a child with a disability").

As Plaintiffs failed to plead facts establishing that they are entitled to relief under IDEA, their allegation of unlawful discrimination under IDEA and request for declaratory judgment cannot stand. Therefore, Count Five is dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. ## 21, 22, 23] are GRANTED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of January 2022.