# 22-0249-CV

*To Be Argued By:*
**Darren P. Cunningham**
**Assistant Attorney General**

### IN THE
# United States Court of Appeals
#### FOR THE SECOND CIRCUIT

———————

**We the Patriots USA, Inc., CT Freedom Alliance, LLC, Constantina Lora, Miriam Hidalgo, and Asma Elidrissi,**
*Plaintiffs-Appellants*

v.

**Connecticut Office of Early Childhood Development, Connecticut State Department of Education, Connecticut Department of Public Health, Bethel Board of Education, Glastonbury Board of Education, and Stamford Board of Education,**
*Defendants-Appellees*

———————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

———————

**BRIEF OF STATE DEFENDANTS-APPELLEES**

———————

**WILLIAM TONG**
**ATTORNEY GENERAL**

**CLARE KINDALL**
**SOLICITOR GENERAL**

**Darren P. Cunningham**
**Timothy J. Holzman**
**Assistant Attorneys General**

**Alayna M. Stone**
**Associate Attorney General**
**165 Capitol Avenue**
**Hartford, CT 06106**
**P.: 860-808-5210**
**F.: 860-808-5365**
**Email: Darren.Cunningham@ct.gov**
         **Timothy.Holzman@ct.gov**
         **Alayna.Stone@ct.gov**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ........................................................iv

COUNTER STATEMENT OF THE CASE ...............................1

  I.  IN RESPONSE TO DECLINING SCHOOL VACCINATION RATES, CONNECTICUT PHASES OUT THE RELIGIOUS EXEMPTION TO ITS SCHOOL VACCINATION LAW ................1

  II. THE LAWSUIT ...................................................................4

SUMMARY OF ARGUMENT ...................................................6

ARGUMENT ..............................................................................9

  I.  THE DISTRICT COURT PROPERLY DISMISSED COUNTS ONE THROUGH FOUR AGAINST THE STATE DEFENDANTS, AND ALL CLAIMS BY THE ASSOCIATION PLAINTIFFS, FOR LACK OF SUBJECT MATTER JURISDICTION ............................................9

   A.   The District Court properly concluded that counts one through four were barred by the Eleventh Amendment, and did not abuse its discretion in denying Plaintiffs' request to amend their Complaint. ...........................................9

    1.   Standard of review. ................................................9

    2.   The Eleventh Amendment precludes WTP's claims against the State Defendants ...............................10

    3.   The State Defendants notified WTP of their Eleventh Amendment arguments and, accordingly, the District Court properly denied leave to amend ...................12

    4.   WTP's arguments concerning the prefiling conference were waived ...................................................14

   B.   The District Court properly concluded that the association Plaintiffs failed to plead sufficient facts to establish associational standing. .........................................14

    1.   Standard of review ...............................................15

2. The association plaintiffs failed to plead that any of their individual members would have standing in their own right ................................................. 15

II. THE DISTRICT COURT PROPERLY DISMISSED ALL CLAIMS FOR FAILURE TO ALLEGE SUFFICIENT FACTS UPON WHICH RELIEF MAY BE GRANTED ............... 19

A. Standard of review .................................................... 19

B. WTP's free exercise claim (count one) is foreclosed by *Phillips*, is a neutral law of general applicability that easily meets rational basis review, and in any event would withstand strict scrutiny. .............................. 20

    1. *Phillips* forecloses WTP's free exercise claim. ...................... 21

    2. Alternatively, the District Court properly concluded that § 10-204a is neutral law of generally applicability, and is therefore subject only to rational basis review, which it easily satisfies. ......................................... 28

    3. Even if § 10-204a were subject to strict scrutiny, it would satisfy that standard ............................... 42

C. WTP's claim that § 10-204a infringes on their rights to privacy and medical freedom (count two) is foreclosed by *Phillips*, and in any case fails because neither right encompasses vaccination, and because § 10-204a does not compel vaccination. .......................................... 48

D. WTP's equal protection claim (count three) was properly dismissed because § 10-204a neither infringes on a fundamental right nor distinguishes on the basis of a suspect class, and easily meets rational basis review. ...... 52

    1. Rational basis review applies because § 10-204a does not burden a fundamental right, and because their free exercise claim failed. ...................................... 54

    2. Section 10-204a satisfies rational basis review .................... 56

E. WTP's parental rights claim (count four) fails because it is subsumed within their free exercise claim. ...................... 61

F.    The District Court properly dismissed Plaintiff Elidrissi's IDEA claim (count five) because she failed to plead that her child is a "child with a disability," and because her IDEA claim fails on the merits. .......................................... 63

  1.    Plaintiff Elidrissi failed to plead that her child is a "child with a disability" ........................................................... 63

  2.    Section 10-204a does not violate the IDEA .......................... 65

CONCLUSION ..................................................................................... 70

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021) ................... 34

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620
(2d Cir. 2020) ..................................................................... 45

*Akron v. Akron Center for Reproductive Health*, 462 U.S.
416 (1983) ......................................................................... 50

*Alden v. Maine,* 527 U.S. 706 (1999) ......................................... 11

*Allco Fin. Ltd. v. Klee,* 805 F.3d 89 (2d Cir. 2015) ................................. 65

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................. 19, 64

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................... 19

*Blouin v. Spitzer*, 356 F.3d 348 (2d Cir. 2004) ...................................... 48

*Boone v. Boozman*, 217 F. Supp. 2d 938 (E.D. Ark. 2002) ...................... 55

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ....................................... 20

*Caviezel v. Great Neck Pub. Sch.*, 739 F. Supp. 2d 273,
(2010), *aff'd*, 500 Fed. Appx. 16 (2d Cir. 2020) ................................... 62

*Caviezel v. Great Neck Pub. Schs.*, 500 F. App'x 16
(2d Cir. 2012) ..................................................................... 49

*Cent. Rabbinical Cong. of the United States v. N.Y.C. Dep't
of Health & Mental Hygiene*, 763 F.3d 183 (2d Cir. 2014) ...... 21, 29, 32

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ............... 20

*Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d
146 (2d Cir. 2010) ................................................................. 19

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S.
520 (1993) ..................................................................... 28, 32

*Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680
    F.3d 194 (2d Cir. 2012) .................................................. 20, 33

*Cruzan v. Dir. Missouri Dep't of Health*, 497 U.S. 261
    (1990) ........................................................................ 48, 51

*CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*,
    306 F.3d 87 (2d Cir. 2002) ................................................. 12

*Deposit Ins. Agency v. Superintendent of Banks (In re Deposit
    Ins. Agency)*, 482 F.3d 612 (2d Cir. 2007) ........................... 10

*Disability Advocates, Inc. v. New York Coalition for Quality
    Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012) .............. 15

*Doe v. Zucker,* 520 F. Supp. 3d 218 (N.D.N.Y. 2021) ...................... 52, 55

*Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d
    132 (2d Cir. 2018) ............................................................ 10

*Employment Div., Dept. of Human Resources of Oregon v.
    Smith*, 494 U.S. 872 (1990) ........................................... 21, 29

*F.F. v. New York*, 143 N.Y.S.3d 734 (App. Div. 3rd
    Dept.) ................................................................. 31, 41, 58

*F.F. v. State of N.Y.*, 114 N.Y.S.3d 852 (Sup. Ct. 2019) ...................... 44

*Faculty v. New York University,* 11 F.4th 68 (2d Cir. 2021) ................. 16

*Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*,
    985 F. Supp. 2d 262 (D. Conn. 2013) .................................. 15

*Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570
    (2d Cir. 2002) ............................................................. 40, 42

*Fraternal Order of Police Newark Lodge No. 12 v. City of
    Newark*, 170 F.3d 359 (3d Cir. 1999) ................................ 39, 40

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) ......... 28, 33, 34, 37

*Hanzel v. Arter*, 625 F. Supp. 1259 (S.D. Oh. 1985) .......................... 50

v

*Heller v. Doe*, 509 U.S. 312 (1993) .......................................... 53

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ........................................................... 7, 15, 16, 18

*In re Deposit Ins. Agency*, 482 F.3d at 617 .............................. 11

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ............................. 26

*J.T. v. de Blasio*, 500 F. Supp. 3d 137 (S.D.N.Y. 2020) .................... 66, 70

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ............................ passim

*Johnson v. Robison*, 415 U.S. 361 (1974) ................................. 56

*Kampfer v. Cuomo*, 643 F. App'x 43 (2d Cir. 2016) ................................. 59

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) ........................................ 27

*Katel Ltd. v. AT&T Corp.,* 607 F.3d 60 (2d Cir. 2010) ........................... 14

*Knight v. Conn. Dep't of Public Health*, 275 F.3d 156 (2d Cir. 2001) ................................................... 53

*Leebaert v. Harrington*, 332 F.3d 134 (2d Cir. 2003) ............ 28, 29, 62, 63

*Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015) ........... 10

*Locke v. Davey*, 540 U.S. 712 n.3 (2004) ................................. 56

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................. 15

*M. L. v. Smith*, 867 F.3d 487 (4th Cir. 2017) .......................... 69

*Marshall Joint Sch. Dist. No. 2 v. C.D.,* 616 F.3d 632 (7th Cir. 2010) ................................................... 64

*McCann v. City of Chicago*, 968 F.2d 635 (7th Cir. 1992) ...................... 58

*Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693 (2d Cir. 2015) ................................................... 15

vi

*Morrison v. Eminence Partners II, L.P.*, 714 Fed. Appx. 14 (2d Cir. 2017) ................................................................. 26

*Mosier v. Varren County Bd. of Health*, 308 Ky. 829 (1948) ................. 44

*N.D. v. Hawaii Department of Education*, 600 F.3d 1104 (9th Cir. 2010) ....................................................................... 65

*N.Y. State Ophthalmological Soc'y v. Bowen*, 854 F.2d 1379 (D.C. Cir. 1988)....................................................................... 50

*Neary v. Gruenberg*, 730 F. App'x 7 (2d Cir. 2018).................... 40, 54, 57

*New Orleans v. Dukes*, 427 U.S. 297 (1976)............................................ 59

*Nikolao v. Lyon*, 875 F.3d 310 (6th Cir. 2017)....................................... 24

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) .................................................. 58

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114 (2d Cir. 2012) ................................................................... 14

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................. 10

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81 (2d Cir. 2011)...................................................... 19

*Peck ex rel. Peck v. Lansing Sch. Dist.*, 148 F.3d 619 (6th Cir. 1998) ....................................................................... 69

*Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015)............. passim

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992)................................ 48

*Prince v. Massachusetts*, 321 U.S. 158 (1944)................................ passim

*Progressive Credit Union v. City of N.Y.*, 889 F.3d 40 (2d Cir. 2018)....................................................................... 57

*Rodriguez v. Winski*, 444 F. Supp. 3d 488 (S.D.N.Y. 2020).................... 16

*Roe v. Wade*, 410 U.S. 113 (1973)....................................................... 48, 50

vii

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) .................................................................. 30, 31

*Sadlock v. Bd. Of Ed.*, 137 N.J.L. 85, 90, 58 A.2d 218 (1948) ............... 44

*Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25 (2d Cir. 1991) ................................................... 11

*Skoros v. City of New York*, 437 F.3d 1 (2d Cir. 2006) ........................... 62

*Steinberger v. Lefkowitz*, 634 F. App'x 10 (2d Cir. 2015) ....................... 18

*Stevens v. City of Oneonta*, No. 20-3672, 2021 U.S. App. LEXIS 29484, at *2 (2d Cir. Sep. 30, 2021) ........................................ 20

*Stormans, Inc. v. Wiesman*, 794 F.3d 1064 (9th Cir. 2015) ................................................................ 34

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .............................. 18

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ........................................... 37

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) ...................... 68

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) ................................................................. 13

*Treiber v. Aspen Dental Mgmt.*, 635 F. App'x 1 (2d Cir. 2016) .............. 18

*United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) ........................................... 15

*United States v. Oshatz*, 912 F.2d 534 (2d Cir. 1990) ............................ 26

*United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973) ........................................... 18

*V.D. v. New York*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) ............. 66, 67, 70

*W.D. v. Rockland Cty.*, 521 F. Supp. 3d 358 (S.D.N.Y. 2021) ................................................... 24, 56, 58

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266
  (2d Cir.), 17 F.4th 368 (2d Cir. 2021)........................................... passim

*Weixel v. Bd. of Educ.*, 97 Civ 9367 (DAB), 2000 U.S. Dist.
  LEXIS 11041, at *18 ............................................................................ 64

*Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079
  (S.D. Cal. 2016).............................................................................. passim

*Williams v. Doe*, 639 Fed. Appx. 55 (2d Cir. 2016) ................................. 19

*Williams v. Rhodes*, 393 U.S. 23 (1968) ................................................. 56

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)................................................ 62

*Workman v. Mingo County Bd. of Educ.*, 419 F. App'x 348
  (4th Cir. 2011) ................................................................................ passim

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)
  (*Gorsuch, J.*) .................................................................................... 31

*Zucht v. King*, 260 U.S. 174 (1922) ........................................... 22, 53, 55

**Statutes**

§ 10-204a.......................................................................................... passim

§ 10-204a(a) ............................................................................... 31, 38, 55

§ 10-204a(a)(1) ....................................................................................... 3

§ 10-204a(a)(2) ................................................................................ 33, 36

§ 10-204a(c)........................................................................................... 54

§ 1401 (3) .............................................................................................. 64

§ 1415(j) ................................................................................................ 68

§ 300.8(a)(2) .......................................................................................... 65

20 U.S.C. § 1401(3)................................................................................ 64

ix

20 U.S.C. §1415 (j) ................................................................... 67

34 C.F.R. §300.8 (a) ................................................................. 64

Conn. Gen. Stat. § 10-204a (a) (3) ............................................57

Conn. Gen. Stat. § 10-204a(a)(2) ..............................................30

Conn. Gen. Stat. § 10-204a(b) .................................................... 2

Conn. Gen. Stat. § 10-204a(c) ..................................................... 2

Conn. Gen. Stat. §§ 10-204a(b) and (c) .............................. 46, 58

## Other Authorities

Fed. R. Civ. P. 10(c) ................................................................. 20

Fed. R. Civ. P. 15(a)(2) ............................................................ 13

P.A. 21-6 .................................................................... passim

P.A. 21-6 § 1 ............................................................... passim

P.A. 21-6 § 1 ........................................................................... 4

## Rules

Rule 12(b)(1) .............................................................................. 5

Rule 12(b)(6) ................................................................. 6, 14, 19

## COUNTER STATEMENT OF THE CASE

## I. IN RESPONSE TO DECLINING SCHOOL VACCINATION RATES, CONNECTICUT PHASES OUT THE RELIGIOUS EXEMPTION TO ITS SCHOOL VACCINATION LAW

"Childhood vaccinations are one of the most significant public health interventions of all time." Eileen Wang, et al., *Nonmedical Exemptions from School Immunization Requirements: A systemic review*, 104 Am. J. Pub. Health at e62 (2014), https://bit.ly/3z06FQE. They safeguard children's health and protect communities against contagious diseases. *Id.* By one estimate, they have prevented more than 100 million cases of serious disease since 1924. *See* Lawrence O. Gostin, *Law Ethics, and Public Health in the Vaccination Debates*, JAMA Online at E1 (2015), https://bit.ly/3CiOXcL. As a result, all fifty States impose vaccination requirements as a condition for children attending school. *Id.*

Connecticut's school vaccination law, set forth in Conn. Gen. Stat. § 10-204a, requires all public and private schools to require their students to be vaccinated against certain communicable diseases before permitting them to enroll. Prior to April, 2021, § 10-204a(a) allowed students to obtain exemptions from the vaccination requirements for

medical reasons if they presented a certificate from their medical provider indicating that in the provider's opinion, a vaccine was "medically contraindicated because of [that student's] physical condition," or for religious reasons if they presented a statement that a vaccine "would be contrary to [their] religious beliefs" or those of their parent or guardian. Conn. Gen. Stat. § 10-204a (Rev. to 2019) (a)(2) and (3).

In April, 2021, the Connecticut General Assembly passed No. 21-6 of the 2021 Public Acts ("P.A. 21-6"). Section 1 of P.A. 21-6 amended § 10-204a(a) to begin phasing out the religious exemption. Under the new law, Children enrolled in kindergarten through twelfth grade ("K-12") who had sought religious exemptions prior to the passage of P.A. 21-6 were grandfathered, i.e., may continue using their religious exemptions. Conn. Gen. Stat. § 10-204a(b). Children enrolled in a preschool or prekindergarten program ("pre-K") who had sought exemptions were not grandfathered, but were given a one-year grace period to become vaccinated, until September 1, 2022, or 14 days after transferring to a public or private school program, whichever was later. Conn. Gen. Stat. § 10-204a(c). All other children were required to become vaccinated, or

submit proof they were in the process of doing so under § 10-204a(a)(1), before being permitted to enroll for the 2020-21 school year.

The General Assembly passed P.A. 21-6 § 1 as a public health measure in response to decreasing school vaccination rates across Connecticut over the past several years. *See* Appx.18-19, 20 n.10 (discussing legislative history and public health rationale for P.A. 21-6). Indeed, as the pleadings in this case demonstrate, the religious exemption had been having a growing impact on those vaccination rates. The percentage of incoming kindergarten students claiming a religious exemption increased almost every year from 2012 to 2020:  from 1.4% during the 2012-13 school year to 2.3% by 2019-20, for a total increase of 0.9%.  Appx.120 (School Immunization Survey Data, Complaint Exhibit D).  As a result, overall school vaccination rates decreased at a corresponding rate over that same time period.  For instance, in 2019-20, 96.2% of kindergarteners were fully vaccinated against measles, mumps, and rubella ("MMR"), a 0.9% decrease since 2012-13.  Appx.118.  And the drop in vaccination rates has been especially dramatic in certain individual schools:  the average MMR rate for private schools is only 92.1%, and of the schools with more than thirty kindergarten students,

120 of them have MMR rates below 95%, and 26 have MMR rates below 90%.[1]  Appx.118-19.  By contrast, the percentage of kindergarteners claiming health exemptions has remained constant, at 0.2% in 2019-20, compared with 0.3% during all previous years.  Appx.120.  These data trends were what prompted the General Assembly to pass P.A. 21-6 § 1.

## II.  THE LAWSUIT

Plaintiffs, two associations and three parents suing on behalf of their children (collectively, "WTP"), brought this lawsuit challenging P.A. 21-6 § 1 on April 30, 2021.  The associations, We The Patriots USA, Inc. ("Patriots") and CT Freedom Alliance, LLC ("CT Freedom"), allege that they are organizations that advocate for the protection of constitutional rights and freedoms, and that many of their members are Connecticut parents "affected by" P.A. 21-6 § 1.  Appx.37-38 (¶¶ 2-3).  The three parents allege that their children attend kindergarten and various

---

[1]This is likely the result of "clustering," a phenomenon whereby individuals with religious objections to vaccines tend to cluster in particular communities, causing that community's vaccination rate to be especially low.  *See* May & Silverman, *'Clustering of exemptions' as a collective action threat to herd immunity*, 21 Vaccine 1048, 1050 (2003), https://bit.ly/2TJONcX; *see also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 286 (2d Cir.) (discussing clustering), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

prekindergarten programs. Appx.42-43 (¶¶ 25-30, Constantina Lora); 43 (¶¶ 31-35, Miriam Hidalgo); 44-45 (¶¶ 36-41, Asma Elidrissi). They further allege that vaccinating their children would, for various reasons, be contrary to their personal religious beliefs.

WTP alleges that § 10-204a, as amended by P.A. 21-6 § 1, violates: (1) the free exercise clause of the First Amendment; (2) their rights to privacy and medical freedom; (3) the equal protection clause of the Fourteenth Amendment; (4) their Fourteenth Amendment right to control their children's upbringing; and (5) the Individuals with Disabilities Education Act ("IDEA"). They seek orders declaring that § 10-204a violates the above constitutional and statutory provisions and permanently enjoining its enforcement. Appx.49-50.

The State Defendants moved to dismiss WTP's Complaint. Appx.128. They argued that counts one through four, and all claims brought by the two association plaintiffs, had to be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because counts one through four were barred by the Eleventh Amendment and the association plaintiffs failed to allege sufficient facts to establish associational standing. *Id.* The State Defendants also argued that all five counts had

5

to be dismissed under Rule 12(b)(6) for failure to allege sufficient facts upon which relief may be granted. *Id.* The co-defendants filed motions to dismiss on these same grounds, save for the Eleventh Amendment. Appx.130, 133.

On January 11, 2022, the District Court, Arterton, J., issued an order granting all Defendants' motions to dismiss. Appx.1. The District Court ruled that counts one through four were barred by the Eleventh Amendment, that the two association Plaintiffs lacked associational standing, and that all five counts failed to allege sufficient facts upon which relief may be granted.

This appeal followed. Appx.35. On appeal, Plaintiffs challenge each aspect of the District Court's ruling.

## SUMMARY OF ARGUMENT

Every aspect of the District Court's decision must be affirmed. With respect to subject matter jurisdiction, the District Court properly concluded that, as against the State Defendants, counts one through four were barred by the Eleventh Amendment, and did not abuse its discretion in denying WTP's request for leave to amend their Complaint. The District Court also properly dismissed all claims by the associational

6

plaintiffs because their bare allegation that their members were "affected by" § 10-204a was insufficient to establish that any of them would have individual standing in their own right to challenge the law, as is required to establish associational standing under the first prong of *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

The District Court also properly dismissed all five counts for failure to state claims. WTP's free exercise claim (count one) is foreclosed by *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015), which held that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." Further, even if *Phillips* were not dispositive, § 10-204a is a neutral law of general applicability—it applies equally to all students who are not health exempt, regardless of their religious views—and easily satisfies rational basis review. Finally, even if § 10-204a were subject to strict scrutiny, it would satisfy that standard because the State has a compelling interest in maximizing school vaccination rates to protect public health, and § 10-204a is narrowly tailored to serve that interest.

WTP's claim that § 10-204a violates their rights to privacy and/or medical freedom (count two) is also foreclosed by *Phillips*, which rejected

a similar challenge to New York's school vaccination law. Even without *Phillips*, moreover, WTP's claim would fail because the rights to privacy and medical freedom do not encompass the decision to vaccinate, and even if they did encompass it, § 10-204a would not violate either right because it does not compel vaccination, but merely makes it a condition for school enrollment.

Section 10-204a also does not violate the Equal Protection clause (count three). It neither burdens a fundamental right nor distinguishes based upon religion or any other suspect class. The law is therefore subject only to rational basis review, which it easily satisfies.

Having dismissed WTP's free exercise claim, the District Court also properly dismissed WTP's childrearing claim (count four), which was grounded in their alleged right to control their children's religious upbringing and was therefore subsumed within their free exercise claim. Because conditioning school enrollment on vaccination does not violate the Free Exercise Clause, WTP's parental rights challenge, which is dependent on the same claim of religious freedom, necessarily also fails and was properly dismissed.

8

Finally, the District Court properly dismissed Plaintiff Elidrissi's IDEA claim (count five) because she failed to plead sufficient facts to establish that her child is a "child with a disability" within the meaning of the IDEA. Even if Plaintiff Elidrissi had plead that requirement, however, her claim—which appears to be that § 10-204a is preempted by or somehow violates the IDEA—would still be subject to dismissal. Section 10-204a does not alter children's education plans or inhibit them from receiving special education. Rather, it is the parents' decision not to comply with § 10-204a that will affect their children's education. As such, § 10-204a is not preempted by the IDEA but is instead wholly consistent with it.

## ARGUMENT

I. **THE DISTRICT COURT PROPERLY DISMISSED COUNTS ONE THROUGH FOUR AGAINST THE STATE DEFENDANTS, AND ALL CLAIMS BY THE ASSOCIATION PLAINTIFFS, FOR LACK OF SUBJECT MATTER JURISDICTION**

A. **The District Court properly concluded that counts one through four were barred by the Eleventh Amendment, and did not abuse its discretion in denying Plaintiffs' request to amend their Complaint.**

1. **Standard of review.**

"In considering whether a governmental entity is entitled to Eleventh Amendment sovereign immunity, we review the district court's factual findings for clear error and its legal conclusions de novo." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015). "[A] a district court's denial of leave to amend [is reviewed on appeal] for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case . . . the legal conclusion [is reviewed] *de novo.*" *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (citation omitted).

## 2. The Eleventh Amendment precludes WTP's claims against the State Defendants

Pursuant to the Eleventh Amendment, states are immune from suits brought against them in federal court by citizens of the same state or other states. *Papasan v. Allain*, 478 U.S. 265, 276 (1986). The immunity also extends to any "state entity that is an 'arm of the State.'" *Deposit Ins. Agency v. Superintendent of Banks (In re Deposit Ins. Agency)*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks and citations omitted).

In the present case, the State Defendants unquestionably are "arms of the state" entitled to assert Eleventh Amendment immunity, and WTP

10

does not argue otherwise. *See Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991); *In re Deposit Ins. Agency*, 482 F.3d at 617.

WTP concedes that the District Court properly "followed Supreme Court precedent" concerning application of Eleventh Amendment immunity to State Defendants, and that it properly dismissed the claims against State Defendants under that precedent. WTP nevertheless argues that the District Court "erred in dismissing [WTP's] claims against the state agency Appellees" because *the Supreme Court* erred in applying immunity to states sued in federal court by their own citizens. WTP at 16.[2] In other words, WTP asks this Court to overrule binding and longstanding precedents of our highest court.

This court is of course duty bound to follow not only Supreme Court precedent on this issue but also its own holdings. Both courts have made clear that Eleventh Amendment immunity applies to lawsuits brought against states by its own citizens. *Alden v. Maine,* 527 U.S. 706 (1999);

---

[2] Notably, WTP does not argue that an exception to Eleventh Amendment immunity applies to counts one through four. *See In re Deposit Ins. Agency*, 482 F.3d at 617.

11

*CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002).

> 3. **The State Defendants notified WTP of their Eleventh Amendment arguments and, accordingly, the District Court properly denied leave to amend**

WTP argues that "as a matter of practice, Judge Arterton typically holds a pre-filing conference with parties before they file a dispositive motion." WTP at 17. In point-of-fact, Judge Arterton's Pretrial Preferences provides in pertinent part:

> Dispositive Motions
> Judge Arterton does not permit dispositive motions until there has been a pre-filing conference. ....
> At the pre-filing conference, the plaintiff may be permitted to amend the complaint to address issues that would otherwise be subject to a motion to dismiss. *However, if the plaintiff chooses not to amend and a motion to dismiss is granted, Judge Arterton ordinarily will not grant leave to amend.....*

https://www.ctd.uscourts.gov/content/janet-bond-arterton

(emphasis added). On June 8, 2021, State Defendants filed their motion for the requisite Pre-Filing Conference. App.146. On June 30, 2021, the District Court conducted the pre-filing conference. App.146. During the conference the State Defendants indicated that they would move to dismiss the complaint because, *inter alia,* WTP failed to sue state officials and therefore Eleventh Amendment immunity applied. Thereafter

Judge Arterton asked counsel if WTP planned to amend its complaint. Counsel declined.

Defendants subsequently filed motions to dismiss.  Appx.146.  The State Defendants raised their Eleventh Amendment Immunity argument as indicated at the pre-filing conference.  On August 9, 2021, WTP filed its memorandum in opposition.  App.147.  In their opposition WTP argued that the Eleventh Amendment did not bar their lawsuit.  In the alternative, WTP asked for leave to amend their complaint to add state officials.  However, at no time did counsel argue—as they do here—that leave should be granted to amend because the State Defendants failed to alert them at the prefiling conference to their Eleventh Amendment argument.

While leave to amend should generally be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), it may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted).  Here it would be futile to allow the Complaint to be amended to name state officials because, as discussed below, all of WTP's claims must be dismissed for

13

failure to allege sufficient facts. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) . . . ." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir. 2012).

The District Court properly denied the request to amend the complaint to add agency officials as defendants both based on its established practice, and because any amendment would be futile.

### 4. WTP's arguments concerning the prefiling conference were waived

Additionally, even if opposing counsel were correct that the State Defendants did not raise properly the Eleventh Amendment issue at the prefiling conference—which they are not—WTP waited until this appeal to raise the issue despite State Defendants raising it in their motion to dismiss. WTP is therefore attempting to raise an argument for the first time on appeal, which is not permitted. "An argument raised for the first time on appeal is typically forfeited." *Katel Ltd. v. AT&T Corp.,* 607 F.3d 60, 68 (2d Cir. 2010).

### B. The District Court properly concluded that the association Plaintiffs failed to plead sufficient facts to establish associational standing.

14

### 1. Standard of review

"Whether a plaintiff has standing to sue is a question of law, which we review *de novo*." *Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693, 694 (2d Cir. 2015).

### 2. The association plaintiffs failed to plead that any of their individual members would have standing in their own right

An association has standing to sue on behalf of its members if, *inter alia*, "its members would otherwise have standing to sue in their own right . . . ." *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 157 (2d Cir. 2012) (quoting *Hunt*, 432 U.S. at 343). This element (the first prong of *Hunt*) requires the association "to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). For an individual member to have standing, they must demonstrate (1) a concrete, particularized injury in fact; (2) causation; and (3) redressability. *Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 268 (D. Conn. 2013) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

15

District courts in this circuit disagree about whether, to satisfy prong one of *Hunt*, the association must identify by name the members who have individual standing to sue. *See Rodriguez v. Winski*, 444 F. Supp. 3d 488, 496 n.3 (S.D.N.Y. 2020) (discussing split). This Court need not resolve the split in this appeal because, under either approach, the association "must at a minimum 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" *Id.*, 496 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Largely on the basis of this court's decision in *Faculty v. New York University,* 11 F.4th 68 (2d Cir. 2021), the District Court denied associational standing for the two associational plaintiffs because the Complaint fails to allege that either association has members who desire a religious exemption but will be unable to obtain one. Appx.11. The Complaint merely alleges that the associations have as members "Connecticut parents affected by the matters complained of herein." Appx.9. The District Court held that the associations' failure to "detail, for example, the school districts or grade level of these members' children or whether these members have previously sought a religious exemption

16

. . . [or to] provide facts detailing how their members would be 'affected by the legislation' such that they would suffer harm," was fatal to their associational standing.  Appx.11.

WTP argues on appeal that the District Court erred in two ways.  First, that pleading its members were "affected by the legislation complained of herein" was sufficient to demonstrate standing.  WTP at 20.  Second, that the court should have "infer[red] that the three individual Appellants . . . are members of both organizations . . . ."  WTP at 20-21.  Neither argument is persuasive.

Neither association has met the associational pleading requirements to demonstrate standing.  Patriots simply alleges that "[a] significant number of its members are Connecticut parents affected by the matters complained of herein."  Appx.37-38 (¶ 2).  Similarly, CT Freedom alleges that "[m]ost of its members are parents affected by the legislation complained of herein."  Appx.38 (¶ 3).  Neither association provides specifics about how their members were "affected by" P.A. 21-6, or alleges any facts that could establish that they were "affected" in a manner that actually rises to the required level of a particularized, concrete injury in fact so as to give them individual standing. *See Treiber*

17

*v. Aspen Dental Mgmt.*, 635 F. App'x 1, 3 (2d Cir. 2016) ("because the allegation is wholly conclusory and unsupported by any facts, it is insufficient to support standing"); *see also Summers*, 555 U.S. at 498 (association's mere assertions of "probability that some of [its] members are threatened with concrete injury" is insufficient); *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688-89 (1973) (allegation that plaintiff "could be affected by" challenged action insufficient to confer standing).

The two associational Plaintiffs' ask this court to "infer" that the named Plaintiffs "are members of both organizations" for purposes of meeting the first prong of *Hunt*. WTP at 20-21. This the Court cannot do. Because the associations failed to plead this fact in their Complaint, the Court cannot consider it. *See Steinberger v. Lefkowitz*, 634 F. App'x 10, 12 (2d Cir. 2015) (facts not alleged in pleadings cannot be used to establish standing).

Because the association Plaintiffs have failed to plead that any of their individual members would have standing to sue in their own right, they lack associational standing and their claims were properly dismissed.

## II. THE DISTRICT COURT PROPERLY DISMISSED ALL CLAIMS FOR FAILURE TO ALLEGE SUFFICIENT FACTS UPON WHICH RELIEF MAY BE GRANTED

### A. Standard of review.

"[W]e review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6)." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88 (2d Cir. 2011). "The complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Williams v. Doe*, 639 Fed. Appx. 55, 56 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting this review, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). Legal conclusions, labels, and mere recitations of the elements, however, are not entitled to the presumption of truth and are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

"In addition to the complaint, we may consider documents attached to the complaint, statements incorporated in it by reference, and documents 'integral' to the complaint." *Stevens v. City of Oneonta*, No.

20-3672, 2021 U.S. App. LEXIS 29484, at *2 (2d Cir. Sep. 30, 2021); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); Fed. R. Civ. P. 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). "We also review de novo the district court's legal conclusions, including those conclusions interpreting and determining the constitutionality of a statute." *Commack Self-Service Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 203 (2d Cir. 2012).

### B. WTP's free exercise claim (count one) is foreclosed by *Phillips*, is a neutral law of general applicability that easily meets rational basis review, and in any event would withstand strict scrutiny.

The District Court concluded that WTP's free exercise claim was legally deficient for two independent reasons: (1) it was foreclosed by *Phillips*, 775 F.3d 538, *see* Appx.17; and (2) § 10-204a is both "neutral" and "generally applicable," and is therefore subject only to rational basis review, which it satisfies. Appx.25. As explained below, both rationales are correct. Alternatively, even if § 10-204a were subject to strict scrutiny, it would meet that standard.

The First Amendment Free Exercise Clause, applicable to the States through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . .

20

prohibiting the free exercise [of religion]." Under *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) ("*Smith*"), the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religious prescribes (or proscribes)." *Id.*, 879. Thus, laws that are both "neutral" and "generally applicable" are subject only to rational basis review, *Cent. Rabbinical Cong. of the United States v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014), under which the law is "presumed . . . valid" so long as it is "rationally related to a legitimate state interest." *Id.*, 186 n.2. If the law fails to meet either requirement, it is subject to strict scrutiny. *Id.*, 193.

### 1. *Phillips* forecloses WTP's free exercise claim.

It is helpful to begin with a brief overview of the Supreme Court caselaw that formed the basis for this Court's decision in *Phillips*. Starting with *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), the Supreme Court has consistently upheld the States' ability to enact "health laws of every description" to protect the safety of the general public. *Id.*, 25. In *Jacobson*, the Court rejected a Fourteenth Amendment

due process challenge to a Massachusetts law that made it a crime to refuse to be vaccinated for smallpox, holding that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.*, 26-27. Although *Jacobson* did not address the Free Exercise Clause, which had not yet been applied to the States, the Court broadly recognized that the Massachusetts law did not "invade[] *any right* secured by the Federal Constitution." *Id.*, 38 (emphasis added). It also cited favorably to several state court decisions that had upheld "statutes making the vaccination of children a condition of their right to enter or remain in public schools." *Id.*, 31-34. Indeed, the Supreme Court later relied upon *Jacobson* when rejecting due process and equal protection challenges to a compulsory school vaccination law, concluding that "[*Jacobson*] had settled that it is within the police power of a State to provide for compulsory vaccination . . . ." *Zucht v. King*, 260 U.S. 174, 176 (1922).

Thereafter, in *Prince v. Massachusetts*, 321 U.S. 158 (1944), the Court rejected a free exercise challenge to a child labor law. *Id.*, 159-61. In so doing, the Court cited *Jacobson* for the proposition that one "cannot claim freedom from compulsory vaccination . . . on religious grounds. *The*

*right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." Id.,* 166-67 and n.12 (emphasis added; footnote omitted).

This Court decided *Phillips* against this precedential backdrop. In *Phillips,* the plaintiffs brought free exercise challenges to New York's state law requiring all children to be vaccinated in order to attend public school, and to a regulation permitting school officials to exclude unvaccinated students from school during an outbreak of a vaccine-preventable disease. 775 F.3d at 540. At the time, New York's vaccination law permitted both religious and medical exemptions (the religious exemption has since been repealed). *Id.* The District Court dismissed the challenge to the vaccination law. *Id.,* 542.

This Court affirmed. The Court reviewed *Jacobson* and *Prince*, and after concluding that those cases were "consonant" with the principle that neutral laws of general applicability are subject only to rational basis review, held that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." *Id.,* 543. The Court also emphasized that, although New York's law permitted religious exemptions, it would have been constitutional even if it had not. The

23

Court explained that "New York could constitutionally require that *all children* be vaccinated in order to attend public school," and that "New York law *goes beyond what the Constitution requires* by allowing an exemption for parents with genuine and sincere religious beliefs." *Id.* (emphasis added). The Court also "agree[d] with," *id.*, the Fourth Circuit's decision in *Workman v. Mingo County Bd. of Educ.*, 419 F. App'x 348, 353-54 (4th Cir. 2011), which rejected a free exercise challenge to a school vaccination law that did not permit religious exemptions. *Accord, We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir.) (holding that plaintiffs' free exercise challenge to emergency rule requiring certain healthcare employees to be vaccinated against COVID-19 was unlikely to succeed on merits), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (holding that, "[c]onstitutionally, [the plaintiff] has no right to an exemption" from school vaccination requirements based on religious beliefs); *see also W.D. v. Rockland Cty.*, 521 F. Supp. 3d 358, 405 (S.D.N.Y. 2021) (collecting cases for proposition that "[n]umerous other courts outside of this Circuit have affirmed that . . . the State [may] mandate vaccination for school-

aged children regardless of whether it violates their parents' religious beliefs"), *appeal docketed*, No. 21-551.[3]

Under *Phillips*, WTP's free exercise claim fails as a matter of law. There is no First Amendment right to an exemption from school vaccination requirements on religious grounds. Connecticut "could constitutionally require that *all* children be vaccinated in order to attend" school, *Phillips*, 775 F.3d at 543 (emphasis added), including children enrolled in K-12 who had already obtained religious exemptions. Therefore, by grandfathering those students, § 10-204a, if anything, "goes beyond what the Constitution requires . . . ." *Id.*

In its brief, WTP concedes that *Phillips* would foreclose its free exercise claim, but instead argues—for the first time on appeal—that those aspects of *Phillips* were mere dicta and should be disregarded. WTP, at 22-24. Not so. "The distinction between holding and dictum requires recognition of . . . how (and by what reasoning) the court resolved the question, and what role, if any, the proposition played in the reasoning that led to the judgment." *Morrison v. Eminence Partners II,*

---

[3]A panel of this Court is scheduled to hear oral argument in this case on May 24, 2022.

25

*L.P.*, 714 Fed. Appx. 14, 17 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007)). If the proposition is "integral to the reasoning," or if removing it would "require a change in either the court's judgment or the reasoning that supports it," the proposition is part of the holding and is not dicta. *Morrison*, 714 Fed. Appx. at 17; *see also United States v. Oshatz*, 912 F.2d 534, 540 (2d Cir. 1990) ("in some contexts expressions of views by an appellate court must be regarded as the law of the circuit, *even though* not an announcement of a holding or even of a necessary step in the reasoning leading to a holding") (emphasis added).

In *Phillips*, the Court's holding was that requiring vaccination as a condition for school enrollment does not violate the free exercise clause, as the Court could not have reached the result it did without reaching that conclusion. That holding did not depend on the availability of a religious exemption in New York's law, as the Court made clear that it would have reached the same conclusion whether the religious exemption existed or not. By contrast, if the availability of a religious exemption in New York's law were relevant, the Court would have had to engage in an entirely different legal analysis to explain why the exemption mattered and how it changed the legal analysis. The Court engaged in no such

26

analysis because the availability of a religious exemption (or lack thereof) is not relevant to the constitutional analysis or the Court's ultimate holding. In other words, even if the Court's discussion of religious exemptions in *Phillips* is dicta, removing it from the opinion would leave WTP with the same categorical holding that squarely refutes their claim; namely, that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause," period. *Phillips*, 775 F.3d at 543. Indeed, this Court has multiple times cited *Phillips* when addressing free exercise challenges to vaccination laws, and has never treated that language as mere dicta. *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021); *We the Patriots USA, Inc.*, 17 F.4th at 288; *accord W.D.*, 521 F. Supp. at 405; *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1084-85 (S.D. Cal. 2016).

Accordingly, *Phillips* is controlling in this case. The District Court properly dismissed WTP's free exercise challenge to § 10-204a based upon *Phillips*.

    2.    **Alternatively, the District Court properly concluded that § 10-204a is neutral law of generally applicability, and is therefore subject only to rational basis review, which it easily satisfies.**

WTP contends that the District Court improperly concluded that § 10-204a was subject only to rational basis review because it is neither neutral nor generally applicable.[4] *WTP*, at 27-28. WTP is wrong.

A law that incidentally burdens religious practices is subject only to rational basis review if it is both "neutral" and "generally applicable." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). At the outset, *Phillips* recognizes that school vaccination requirements like the one set forth in § 10-204a are subject only to rational basis review. *Phillips*, 775 F.3d at 543 (discussing *Smith* doctrine and citing *Leebaert v. Harrington*, 332 F.3d 134, 143-44 (2d Cir.

---

[4]WTP also argues (1) that § 10-204a should be subject to strict scrutiny under the "hybrid rights" doctrine because it also implicates the state right to an adequate education under article eighth, § 1 of the Connecticut constitution, WTP, at 32-36, and (2) the *Smith* neutrality/general applicability standard should be revisited. *Id.*, at 36-40. Both arguments are foreclosed by existing precedent. This Court squarely rejected the "hybrid rights" theory in *Leebaert v. Harrington*, 332 F.3d 134, 144 (2d Cir. 2003), concluding that it could "think of no good reason for the standard of review to vary simply with the number of constitutional rights that the plaintiff asserts have been violated." Likewise, the Supreme Court recently declined to revisit *Smith* in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021).

2003), for proposition that parental free exercise claims are subject to rational basis review). And *Smith* itself lists "compulsory vaccination laws" as an example of the type of law that should not be subject to strict scrutiny. *Smith*, 494 U.S. at 888-89. To the extent *Phillips* and *Smith* do not resolve this issue, however, § 10-204a is both neutral and generally applicable, and easily satisfies rational basis review.

### a. Neutrality

"A law is not neutral . . . if it is 'specifically directed at [a] religious practice.'" *Cent. Rabbinical Cong.*, 763 F.3d at 193 (quoting *Smith*, 494 U.S. at 878). The law may fail this requirement "if it explicitly singles out a religious practice," or if it is facially neutral but nonetheless "targets religious conduct for distinctive treatment." *We the Patriots USA, Inc.*, 17 F.4th at 281 (internal quotation marks omitted).

In *We the Patriots USA, Inc.*, this Court held that the plaintiffs failed to show a likelihood that an emergency New York rule requiring certain healthcare employees to be vaccinated against COVID-19 was non-neutral. 17 F.4th at 281-84. Similar to § 10-204a, the New York rule authorized health but not religious exemptions. The Court reasoned that the rule was neutral because it "requires all covered employees who can

29

safely receive the vaccine to be vaccinated. It applies whether an employee is eager to be vaccinated or strongly opposed, and it applies whether an employee's opposition or reluctance is due to philosophical or political objections to vaccine requirements, concerns about the vaccine's efficacy or potential side effects, or religious beliefs. The absence of a religious exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required." *Id.*, 282.

The same is true here. Section 10-204a requires "each child" to be vaccinated before enrolling in school unless the child submits adequate documentation establishing that the vaccination is "medically contraindicated" because of the child's "physical condition . . . ." Conn. Gen. Stat. § 10-204a(a)(2). With the exception of K-12 students with existing religious exemptions (who are grandfathered), the statute excludes from enrollment *all* children who have not been vaccinated, regardless of the reason why they have not been vaccinated. The statute therefore does not "single out [religion] for especially harsh treatment," *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020), but treats religious objectors exactly the same as all other unvaccinated children who are not health exempt. Accordingly, the statute is neutral.

30

On appeal, WTP's argument appears to be that, because P.A. 21-6 § 1 removed the religious exemption from § 10-204a(a), it necessarily targeted religious objectors. WTP, at 28-29. The neutrality requirement, however, is concerned with laws that target religion for "*especially harsh* treatment*,*" *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 66 (emphasis added), and repealing a religious exemption that was not constitutionally required to begin with does not treat religious objectors *more harshly* than secular groups, but subjects them to the same requirements that everyone else had already been subject to. *See F.F. v. New York*, 143 N.Y.S.3d 734, 741 (App. Div. 3rd Dept.), *appeal dismissed*, 154 N.Y.S.3d 567 (2021).

Moreover, as then-Judge Gorsuch observed: "Surely the granting of a religious accommodation to some in the past doesn't bind the government to provide that accommodation to all in the future, especially if experience teaches the accommodation brings with it genuine safety problems that can't be addressed at a reasonable price. If the rule were otherwise, it would only invite the unwelcome side effect of discouraging [the government] from granting the accommodation in the first place . . . ." *Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014). That is just

31

what occurred here. As the District Court explained, Appx.18-19, 20 n.10, the impetus for P.A. 21-6 § 1 was not religious animus but concerns over falling school vaccination rates and the attendant risks to the public health. Indeed, WTP made no attempt even to argue otherwise.

That P.A. 21-6 repealed the religious exemption is therefore of no moment. The statute is neutral.

### b. General applicability

General applicability does not require universality, as "[a]ll laws are selective to some extent." *Lukumi*, 508 U.S. at 542-43. Rather, "[t]he general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens only on conduct motivated by religious belief.'" *Cent. Rabbinical Cong. of the United States*, 763 F.3d at 196 (quoting *Lukumi*, 508 U.S. at 542-43).

Section 10-204a imposes the same vaccination requirements on all school children regardless of religion, and does not impose any special obligations only on those children whose opposition to vaccines is religiously motivated. Children who are not health-exempt but whose parents object to vaccines for secular reasons must comply with the requirements to the same extent as children whose parents object for

32

religious reasons. Thus, § 10-204a is generally applicable. *E.g. Commack Self-Service Kosher Meats, Inc.*, 680 F.3d at 210-11 (holding that law regulating sale of kosher goods was generally applicable because it "applies to any seller who offers products for sale as 'kosher' regardless of the seller's religious belief or affiliation").

WTP argues that the provision in § 10-204a(a)(2) authorizing medical exemptions undercuts the law's general applicability because (1) it creates a mechanism for individualized exemptions, WTP, at 29-30; and (2) it renders the law substantially underinclusive. *Id.*, at 32. Neither argument has merit.

### i.    Mechanism for individualized exemptions

"A law is not generally applicable if it invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (internal quotation marks omitted). Such laws "create[] the risk that administrators will use their discretion to exempt individuals from complying with the law for secular reasons, but not religious reasons." *We the Patriots USA, Inc.*, 17 F.4th at 288. For instance, in *Smith*, the Supreme Court held that a statute

33

making applicants eligible for benefits upon a showing of "good cause" for their unemployment was not generally applicable because it gave administrators discretion to deny benefits to individuals who did not work for religious reasons, but grant them to those who did not work for other reasons. 494 U.S. at 884. Similarly, in *Fulton*, the Supreme Court held that a law giving a city official "sole discretion" to grant or deny exemptions to an anti-discrimination law had created a system of individualized exemptions because it "invite[d] the government to decide which reasons for not complying with the [law] are worthy of solicitude." 141 S. Ct. at 1878-79.

This Court recently clarified, however, that "an exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons." *We the Patriots USA, Inc.*, 17 F.4th at 288 (citing *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021), and *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1081-82 (9th Cir. 2015), *cert. denied*, 579 U.S. 941 (2016)). If the exemption is "tied to particularized, objective criteria," it does not "afford unfettered discretion that could lead to religious discrimination . . . ." *Stormans, Inc.*, 794 F.3d at 1081-82. Thus, "[t]he mere existence of an exemption procedure,

34

absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable and subject to strict scrutiny." *We the Patriots USA, Inc.*, 17 F.4th at 288-89 (internal quotation marks omitted).

As WTP admits, *see* WTP at 30, this Court rejected the very argument it is making here in *We the Patriots USA, Inc.*, 17 F. 4th at 289. In that case, the plaintiff argued that the inclusion of a health exemption to the emergency COVID-19 vaccination rule created a system of individualized exemptions, thereby undercutting the rule's general applicability. *Id.* This Court concluded, however, that the law merely "provide[d] for an objectively defined category of people to whom the vaccination requirement does not apply: employees who present a certification from a physician or certified nurse practitioner attesting that they have a pre-existing health condition that renders the vaccination detrimental to their health . . . ." *Id.* Such an exemption, the Court reasoned, "affords no meaningful discretion to the State or employers . . . ." *Id.*

35

The Court also rejected the plaintiff's argument—also made by WTP here, *see* WTP at 31-32—that the medical exemption was discretionary in nature because the medical workers who recommend the health exemptions "must use their medical judgment to determine whether a particular individual has a contraindication or precaution against receiving the vaccine . . . ." *Id.* The Court explained that "*Smith* itself specifically held that a scheme that included a type of medical exemption—by not criminalizing the use of controlled substances when prescribed by a medical practitioner—was nonetheless generally applicable . . . ." *Id.*, 290 (citing *Smith*, 494 U.S. at 874).

The same is true of § 10-204a(a)(2), which provides that children "*shall* be exempt" from the vaccination requirements if they "present[] a certificate . . . from a physician, physician assistant or advanced practice registered nurse stating that in the opinion of such physician, physician assistant or advanced practice registered nurse such immunization is medically contraindicated because of the physical condition of such child . . . ." (emphasis added). This provision plainly is not an impermissible "individualized exemption," as it applies to an objectively-defined category of individuals: those who obtain the required statement from

36

their medical provider.  It gives no discretion to government officials to decide whether to grant the exemption if the medical-provider statement is obtained.  That the medical professionals have discretion to decide whether, in their opinion, a particular vaccination is contraindicated, is irrelevant.  The statute "leave[s] no room for the State to favor impermissible secular reasons for declining vaccination over religious reasons."  *We the Patriots USA, Inc.*, 17 F. 4th at 290.

### ii.    Substantial underinclusiveness.

A law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Fulton*, 141 S. Ct. at 1877.  "A law is therefore not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it."  *We the Patriots USA, Inc.*, 17 F.4th at 284-85.  "Whether two activities are comparable . . . must be judged against the asserted government interest that justifies the regulation at issue."  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).  "Comparability is concerned with the risks various activities pose."  *Id.*

37

Here, the purpose of § 10-204a(a) is twofold: to protect the health and safety of Connecticut's school children and that of the broader public. Allowing children who cannot safely be vaccinated to be exempt from the requirement does not undermine that interest (but in fact *advances* it by preserving the health of those children), and certainly does not undermine it "in a similar way" as religious exemptions would. *See Doe v. Mills*, 16 F.4th 20, 30-34 (1st Cir. 2021) (holding that health exemption to regulation requiring healthcare workers to be vaccinated against COVID-19 supported rather than undermined public health interest, and therefore did not render law substantially underinclusive). As demonstrated by the Immunization Data, incorporated in WTP's Complaint, religious exemptions have had a far greater impact on overall vaccination rates than medical exemptions have. In 2019-20, ten times as many kindergarten students claimed religious exemptions and medical exemptions. Appx.120. And over the past decade, the percentage of kindergarteners claiming religious exemptions has steadily increased year-over-year, suggesting they will have even more of an outsized impact on vaccination rates in the future, whereas health exemptions have remained virtually constant. Moreover, because of "clustering"—a

38

phenomenon that does not apply to medical exemptions—MMR vaccination rates have dropped especially dramatically in certain individual schools, with 120 schools now below the recommended 95% threshold for herd immunity, 26 below 90%, and all private schools at an average of 92.1%. *See* footnote 1 and accompanying text. The risks posed by religious and health exemptions are therefore not remotely comparable so as to render § 10-204a substantially underinclusive.

WTP relies upon then-Judge Alito's opinion in *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) ("*Fraternal Order*"), but that case is plainly distinguishable. WTP, at 30. The law in *Fraternal Order*, which contained the police department's prohibition on beards, was not unconstitutional simply because it created a medical exemption but not a religious one. Rather, the "critical difference" between the exemption in that case and the medical exemption upheld by the Supreme Court in *Smith* was that (1) the medical exemption had nothing to do with the police department's stated "interest in fostering a uniform appearance through its 'no-beard' policy"; and (2) it undermined that policy in the exact same way that a religious exemption would have. *Fraternal Order*, 170 F.3d at 365-66.

The opposite is true of the medical exemption in § 10-204a(a), which supports rather than undermines the state interest, and certainly does not undermine it to the same extent as religious exemptions would. *See Doe*, 16 F.4th at 33-34 (distinguishing medical exemption in *Fraternal Order* from medical exemption to COVID-19 vaccination requirement).

### c.   Rational basis.

When a law is neutral and generally applicable, the state "need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practice." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002). Rational basis review requires merely that the law be "rationally related to a legitimate [government] interest." *Neary v. Gruenberg*, 730 F. App'x 7, 10 (2d Cir. 2018). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts that, taken as true, establish that the law "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that [it is] irrational." *Id.*

WTP's Complaint comes nowhere near meeting that burden. Indeed, the General Assembly's objective in passing P.A. 21-6 § 1— protecting school children and the broader public from communicable

40

diseases—is not merely a legitimate governmental interest but a compelling one. *See Workman*, 419 F. App'x at 352 ("the state's wish to prevent the spread of communicable diseases [through school vaccine requirements] clearly constitutes a compelling interest").

Nor has WTP pleaded any facts establishing that P.A. 21-6 § 1 was not rationally related to that objective. It was not irrational for the General Assembly to have concluded that removing the religious exemption would increase the overall percentage of vaccinated students, thereby decreasing the likelihood of a disease outbreak. The Immunization Data bears out that the religious exemption was having an outsized impact on vaccination rates, causing a slow but steady decrease in vaccination rates among incoming kindergarten classes, particularly in certain individual schools. Appx.120. It was a reasonable exercise of the state's police power to respond to those trends by phasing out the religious exemption. Accordingly, P.A. 21-6 § 1 easily meets rational basis review. *See Phillips*, 775 F.3d at 543; *F.F.*, 143 N.Y.S.3d at 743.

41

### 3. Even if § 10-204a were subject to strict scrutiny, it would satisfy that standard

"[A] law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 574 (2d Cir. 2002). The law satisfies even this stricter standard.

### a. Compelling interest

WTP does not dispute that § 10-204a serves a compelling state interest in protecting the public health. WTP, at 40 n.4. The State Defendants nevertheless emphasize that, although the declining vaccination rates provided them with a compelling interest in repealing the religious exemption, they would have had a compelling interest in doing so even if vaccination rates were not declining.

The Fourth Circuit's decision in *Workman*—a decision this Court has "agree[d]" with, *Phillips*, 775 F.3d at 540—hammers this point home. *Workman* involved a free exercise challenge to West Virginia's mandatory school vaccination law, which, similar to § 10-204a, permitted health exemptions but not religious ones. *Workman*, 419 Fed. Appx. at 352. The Fourth Circuit held that, "assuming for the sake of argument that strict scrutiny applies, prior decisions from the Supreme Court [in

*Jacobson* and *Prince*] guide us to conclude that [the] vaccination laws withstand such scrutiny." *Id.*, 353. Significantly, the court's analysis was in no way dependent on the factual circumstances specific to West Virginia or on vaccination rates having dropped below a particular threshold. In fact, the court rejected the plaintiffs' arguments that the state lacked a compelling interest in requiring vaccinations because there was no "outbreak of an epidemic," or because the law "requires vaccination against diseases that are not very prevalent" or that do not "present[] a clear and present danger." *Id.*, 353 (internal quotation marks omitted). The court instead held: "On the contrary, the state's wish to *prevent* the spread of communicable diseases clearly constitutes a compelling interest." *Id.*, 353 (emphasis added).

Therefore, the State does not need to wait for vaccination rates to fall below any particular threshold before acting, but has a compelling interest in taking prophylactic measures to ensure that vaccination rates never can fall to problematic levels. *See Whitlow*, 203 F. Supp. 3d at 1090 (observing that California's compelling interest in repealing religious exemption to school vaccination law "does not depend on or need to correlate with the existence of a public health emergency," and "exists

43

regardless of the circumstances of the day, and is equally compelling whether it is being used to prevent outbreaks or eradicate diseases"); *F.F. v. State of N.Y.*, 114 N.Y.S.3d 852, 867-68 (Sup. Ct. 2019) ("states need not wait for vaccination rates to fall below the recommended threshold or for outbreaks to occur"), *aff'd*, 143 N.Y.S.3d 734 (App. Div. 3rd Dept. 2021); *Sadlock v. Bd. Of Ed.*, 137 N.J.L. 85, 90, 58 A.2d 218 (1948) (rejecting argument that vaccination law could not stand "since at the time of its adoption, there was no epidemic or threatened epidemic"); *Mosier v. Varren County Bd. of Health*, 308 Ky. 829, 831 (1948) ("the health authorities are not required to wait until an epidemic exists before acting, but it is their duty to adopt timely measures to prevent one").

In any event, as WTP's own Complaint shows, the circumstances in Connecticut only bolster the state's compelling interest. The Immunization Data demonstrates that under-vaccination was solely was but steadily growing into a problem in Connecticut, and that the religious exemptions were the cause. That threat was becoming imminent in certain individual schools. In light of these trends, the state clearly had a compelling interest in phasing out the religious exemption to ensure that under-vaccination did not develop into a public health emergency.

44

### b.  Narrow tailoring.

"Narrow tailoring requires the government to demonstrate that a policy is the least restrictive means of achieving its objective." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). To meet this requirement, "the government must demonstrate that alternative measures imposing lesser burdens on religious liberty would fail to achieve the government's interests, not simply that the chosen route was easier." *Id.* (internal quotation marks omitted).

As noted above, the state had a compelling interest in maximizing the percentage of vaccinated school students in order to protect the public health and reduce the risk of outbreaks. Anything less than full repeal of the religious exemption would not have achieved that interest, and thus does not raise a narrow tailoring problem. *See Whitlow*, 203 F. Supp. 3d at 1091 (repeal of personal belief exemption was narrowly tailored because state's interest in achieving "total immunization" would not be "served by a law that allows for [personal belief exemptions], whether the [exemption] rate is 2% or 25%").

In fact, § 10-204a is drawn even more narrowly than it needs to be. It "grandfathers" K-12 students with existing religious exemptions,

thereby allowing them to continue to enroll without being vaccinated, and provides children in pre-K who have religious exemptions with an extra year to become vaccinated. Conn. Gen. Stat. §§ 10-204a(b) and (c). Because the state's compelling interest would have justified a full and immediate repeal, the statute's more gradual repeal, which is less burdensome on religious rights, meets the narrow tailoring requirement as a matter of law. C.f. *Phillips*, at 775 F.3d at 543 (observing that state "could constitutionally require that all children be vaccinated in order to attend public school," and that "[b]ecause the State could bar [the plaintiffs'] children from school altogether, a fortiori, the State's more limited exclusion during an outbreak of a vaccine-preventable disease is clearly constitutional").

WTP's narrow tailoring arguments all fail because none of their proposed "less restrictive" alternatives would achieve the state's goal of ensuring maximal school vaccination rates. First, WTP criticizes § 10-204a because it requires vaccination not only in public schools but also in private schools, day cares, and pre-schools. WTP, at 40. But the State's interest in maximizing vaccination rates is not served by permitting entire institutions to avoid the requirements.

46

Second, WTP argues that the State could have addressed its concern about parents claiming religious exemptions pretextually by "requiring parents to complete sworn statements explaining their religious beliefs" or educating them on the importance and efficacy of vaccines. WTP, at 40-41. Again, this alternative would permit parents to opt out of vaccinating their children, and therefore would not adequately serve the State's interest.

Third, WTP claims that the state could have "articulated a threshold percentage of vaccinated students needed to achieve herd immunity and divided the exemption to its vaccination requirement in a non-discriminatory manner between medical and religious objectors." *Id.*, 41. Once again, this alternative would permit many students to opt out of the vaccination requirements, undermining the state's interest in maximizing vaccination rates.

Because none of these alternatives are adequate means for achieving the state's compelling interest, § 10-204a is narrowly tailored and withstands strict scrutiny.

C. **WTP's claim that § 10-204a infringes on their rights to privacy and medical freedom (count two) is foreclosed by *Phillips*, and in any case fails because neither right encompasses vaccination, and because § 10-204a does not compel vaccination.**

The District Court properly dismissed WTP's claim that § 10-204a violates their "rights to privacy and medical freedom" as recognized in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). Appx.46-47 (¶¶ 53-55). There are three reasons for this.

First, although WTP frames their claim as a challenge under the rights to privacy and medical freedom, "the Supreme Court has made clear" that such claims "are properly analyzed 'in terms of a Fourteenth Amendment liberty interest'" under the substantive due process clause, "rather than in terms of a privacy interest." *Blouin v. Spitzer*, 356 F.3d 348, 361 (2d Cir. 2004) (quoting *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 279 n.7 (1990)); *see also We the Patriots USA Inc.*, 17 F.4th at 293 n.34 (analyzing right to privacy and medical freedom claims "only" under Fourteenth Amendment). When properly viewed as a substantive due process claim, WTP's claim is foreclosed by *Phillips*, 775 F.3d at 538. There this Court held that the plaintiffs' substantive due process challenge to New York's vaccination requirement had in turn been

48

"foreclosed by [*Jacobson*]," in which the Supreme Court "rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." *Id.*, 542 (citing *Jacobson*, 197 U.S. at 38); *see also We the Patriots USA Inc.*, 17 F.4th at 293 (holding that right to privacy and medical freedom challenges to COVID-19 vaccination requirement were unlikely to succeed on merits because "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional."); *Caviezel v. Great Neck Pub. Schs.*, 500 F. App'x 16, 19 (2d Cir. 2012) (rejecting substantive due process challenge to vaccination mandated based on *Jacobson*). The same result must obtain here.

Second, even if WTP could properly bring freestanding right to privacy and medical freedom claims independent of substantive due process, thereby permitting them to avoid *Phillips*, their claim would still fail because neither right encompasses the decision to vaccinate. Regarding the right to privacy, the "types of decisions encompassed . . . are those involving 'freedom of personal choice in matters of marriage

49

and family life.'" *Hanzel v. Arter*, 625 F. Supp. 1259, 1261 (S.D. Oh. 1985)

(quoting *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416,

427 (1983)). The right does not encompass "decision[s] with such broad

community consequences as declining vaccination" against contagious

diseases. *We the Patriots USA Inc.*, 17 F.4th at 293 n.35. Indeed, the

Supreme Court cited *Jacobson* in its opinion in *Roe* as one example of

how the right to privacy is not "unlimited." *Roe*, 410 U.S. at 154; *see also*

*N.Y. State Ophthalmological Soc'y v. Bowen*, 854 F.2d 1379, 1391 (D.C.

Cir. 1988) ("[N]ot every decision relating to the body or bodily integrity is

sufficiently intimate and personal to [implicate the right to privacy]. For

example, the Supreme Court has not recognized that the decision to reject

vaccination implicates a 'fundamental interest,' although bodily invasion

and medical treatment are unavoidably involved."); *Hanzel*, 625 F. Supp.

at 1262 ("the immunization decision is not encompassed by the right of

privacy").

Nor does the right to refuse unwanted medical treatment

encompass vaccination. When discussing the nature and parameters of

that right, the Supreme Court "expressly recognized its holding in

*Jacobson* that 'an individual's liberty interest in declining an unwanted

smallpox vaccine' was outweighed there by 'the State's interest in preventing disease.'" *We the Patriots USA, Inc.*, 17 F.4th at 293 (quoting *Cruzan v. Dir. Missouri Dep't of Health*, 497 U.S. 261, 278 (1990)); *see also Cruzan*, 497 U.S. at 312 and n.12 (citing *Jacobson* as example of why "the right to be free of unwanted medical intervention . . . may not be absolute"). Therefore, any constitutional right to medical freedom does not include the right to refuse vaccination requirements that, like those in § 10-204a, are imposed for the benefit of the public health.

Third, even if the rights to privacy or medical freedom did encompass the decision to vaccinate, WTP's claim would still have to be dismissed because § 10-204a does not infringe on either right. This is because § 10-204a does not compel vaccination, but simply makes it a condition for enrolling in school. The ultimate decision about whether to vaccinate is left to the parents, who can choose to vaccinate their children and send them to public or private school, or forgo vaccination and pursue alternative education such as homeschooling. *See Phillips*, 775 F.3d at 542 n.5 (distinguishing between vaccination law upheld in *Jacobson*, which required "all persons over age twenty-one be vaccinated for small pox and the *criminal prosecution* of the plaintiff for refusing to submit to

51

vaccination," and New York's mandate which "requires only that children who are not otherwise exempted be vaccinated in order to attend school") (emphasis in original); *We the Patriots USA, Inc.*, 17 F.th at 293-94 ("Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers"); *Doe*, 520 F. Supp. 3d at 252 (mandatory vaccinations do not implicate right to privacy because "if a medical exemption is denied . . . the parent may forgo vaccination and homeschool their child").

Accordingly, the District Court properly dismissed this claim.

### D. WTP's equal protection claim (count three) was properly dismissed because § 10-204a neither infringes on a fundamental right nor distinguishes on the basis of a suspect class, and easily meets rational basis review.

On appeal, WTP argues that their equal protection claims were improperly dismissed because the district court employed the wrong standard to determine if strict scrutiny should apply. WTP at 46, 48. This claim is unavailing. Under an equal protection analysis, strict scrutiny is applied to a plaintiff's complaint only if such complaint establishes either (1) that the plaintiff "was selectively treated compared with other

similarly situated [individuals], and that selective treatment was based on impermissible considerations such as race or religion," *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001); or (2) that a fundamental right is implicated. *Heller v. Doe*, 509 U.S. 312, 319 (1993). Neither ground is implicated here.

As a threshold matter, WTP's equal protection claim does not survive *Zucht*, 260 U.S. at 174, in which the Supreme Court rejected an equal protection challenge to a compulsory school vaccination law. The Court held that "in the exercise of the police power reasonable classification may be freely applied," and the law "is not violative of the equal protection clause merely because it is not all-embracing." *Id.*, 177. The Fourth Circuit rejected a similar equal protection challenge in *Workman* on the basis of *Zucht*. *See Workman*, 419 Fed. Appx. at 354-55. This Court should do the same here.

Even if not foreclosed by *Zucht*, WTP's equal protection claim fails as a matter of law. To the extent WTP is claiming that the grandfather clause of § 10-204a creates an age-based distinction, WTP concedes—as it must—that age is not a suspect class and that they must therefore allege that § 10-204a burdens a fundamental right in order to trigger

53

strict scrutiny. WTP, at 47; *see Neary v. Gruenberg*, 730 F. App'x 7, 9 (2d Cir. 2018) ("age is not a suspect class"). Strict scrutiny is inappropriate, however, because (1) § 10-204a does not burden a fundamental right; and (2) WTP's free exercise claim—the only fundamental right they allege was infringed upon—has properly been dismissed. Because § 10-204a easily meets rational basis review, the District Court properly dismissed this claim.

> 1. **Rational basis review applies because § 10-204a does not burden a fundamental right, and because their free exercise claim failed.**

WTP argues that § 10-204a(c) burdens their right to free exercise because it bars unvaccinated children (who are not medically exempt) not only from public schools but also from private schools and day cares, effectively requiring them to choose between adhering to their religious beliefs or providing any formal education to their children. WTP at 49. Although the right to practice religion freely is, generally speaking, a fundamental right, § 10-204a does not burden that right because (1) the right to free exercise does not include the right to a religious exemption from school vaccination requirements, *see e.g. Prince*, 321 U.S. at 66-67; *Phillips*, 775 F.3d at 543; and (2) § 10-204a does not compel vaccination,

but permits parents to forgo vaccination and homeschool their children. *We the Patriots USA, Inc.*, 17 F.th at 293-94; *Doe*, 520 F. Supp. 3d at 252.

Although a parent's decision to forgo vaccination will limit their children's educational options (as would noncompliance with any condition of enrollment), this does not create a violation of a fundamental right that would not otherwise exist. First, "there is no fundamental right to education" under the federal constitution. *Doe*, 520 F. Supp. 3d at 250; *see also Phillips*, 775 F.3d at 542 n.5. Second, *Phillips* squarely upheld states' ability to condition enrollment on vaccination. Third, numerous courts have addressed constitutional challenges to school immunization laws that were equally broad as § 10-204a(a)—prohibiting enrollment in both public and private schools—and concluded that they did not burden fundamental rights.[5]     Because WTP has not established that a

---

[5] *See Zucht*, 260 U.S. at 175 (rejecting equal protection challenge to law barring admission to "a public school or other place of education"); *Workman*, 419 F. App'x at 355 (West Virginia statute prohibiting enrollment in "any of the schools of the state or a state-regulated child care center" did not burden fundamental right); *Whitlow*, 203 F. Supp. 3d at 1087 (concluding that challenge to California statute prohibiting admission "to the State's public and private schools and day care centers" was unlikely to succeed on merits); *Boone v. Boozman*, 217 F. Supp. 2d 938, 956 (E.D. Ark. 2002) (prohibition applying to "public or private school"); *F.F.*, 143 N.Y.S.3d at 742 (New York statute prohibiting attendance at "any public or private school or child care facility").

fundamental right has been burdened, rational basis review applies. *See Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968) (applying strict scrutiny to plaintiff's claims only after identifying fundamental rights that were burdened).

Moreover, the District Court's application of rational basis review was proper for the additional reason that WTP's equal protection claim is premised on its free exercise challenge, which the District Court correctly dismissed under rational basis review. *See Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004) (holding that rational basis applies to equal protection claim alleging religious discrimination where free exercise claim failed); *see also W.D.*, 521 F. Supp. 3d at 410 (same) (quoting *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)). Because the District Court properly dismissed WTP's free exercise challenge for failure to state a claim, WTP's equal protection claim also is properly analyzed under rational basis review.

## 2. Section 10-204a satisfies rational basis review.

When reviewing a classification under rational basis review, courts will not overturn it unless it is "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the

56

government's actions were irrational." <u>Neary</u>, 730 F. App'x at 10. "To withstand a motion to dismiss. . . a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality . . . ." <u>Progressive Credit Union v. City of N.Y.</u>, 889 F.3d 40, 49-50 (2d Cir. 2018).

As an initial matter, § 10-204a makes no distinctions on the basis of religion. It merely distinguishes between health-exemptions, which are permitted, and non-health exemptions, which are not. Conn. Gen. Stat. § 10-204a (a) (3). If a parent seeks an exemption for *any* reason unrelated to their child's health, regardless of whether that reason is religious or secular, they will not qualify for an exemption. Thus, the only classification the statute makes is between children who have a medical need for an exemption and those who do not.

The state has a rational basis for making this distinction. The difference between medical and non-medical objections to vaccination requirements has been well-established since *Jacobson*, which arguably recognized that the state would be constitutionally *required* to permit an exemption to someone who had a medical need for it. *Jacobson*, 197 U.S. 38-39. Moreover, WTP's own Complaint—specifically the Immunization

Data—demonstrates that the number of incoming students claiming religious exemptions had steadily increased over the past several years, causing a decrease in overall vaccination rates, whereas the percentage of students claiming health exemptions remained constant and very low. Appx.118-20. This is more than enough to provide a rational basis for the classification. *See W.D.,* 521 F. Supp. 3d at 410-11; *Whitlow*, 203 F. Supp. 3d at 1087-88; *F.F.*, 143 N.Y.S.3d at 743.

Similarly, assuming for purposes of argument that §10-204a creates an age distinction by grandfathering K-12 children who had previously sought religious exemptions, but not pre-K children, *see* Conn. Gen. Stat. § 10-204a(b) and (c), such a classification easily meets rational basis review. It was not irrational for the state to grandfather K-12 children with existing religious exemptions and thereby protect the expectation interests of their parents, who had relied on the prior version of §10-204a when making decisions about how to education their children. "Grandfather clauses . . . protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause." *McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir. 1992); *see also Nordlinger v. Hahn*, 505 U.S. 1, 13 (1992) ("classifications

58

serving to protect legitimate expectation and reliance interests do not deny equal protection of the laws"); *Kampfer v. Cuomo*, 643 F. App'x 43, 44 (2d Cir. 2016) (holding that grandfather clause of gun regulation met rational basis review for purpose of equal protection claim, and noting that "[g]randfather clauses are a long-accepted legislative tool for mitigating the effect of new regulations on persons who have relied on existing law"). It also was rational for the state to have wanted to grandfather students with existing exemptions in order to "soften the impact of [the repeal] though graduated application." *Whitlow*, 203 F. Supp. 3d at 1088.

Furthermore, it was not irrational for the state to grandfather only the children who were enrolled in K-12 by the time P.A. 21-6 became effective, while giving pre-K children an extra year—until at least September 1, 2022—to become vaccinated. The state reasonably could have concluded that children already enrolled in K-12 were more entrenched in the school system, and were thus more likely to have "built up substantial reliance interests" in maintaining their religious exemptions, than pre-K children who had not yet entered the school system. *See New Orleans v. Dukes*, 427 U.S. 297, 305 (1976) (ordinance

prohibiting street vendor operations, but grandfathering existing venders who were in operation for more than eight years, did not violate equal protection because "the city could reasonably decide that newer businesses were less likely to have built up substantial reliance interests in continued operation"). Moreover, the percentage of incoming kindergarten students claiming religious exemptions had been increasing almost every year since 2012. Appx.118-20. It was reasonable for the legislature to have believed that that trend was likely to continue, and that children then-enrolled in pre-K would claim more religious exemptions, and thus have a greater impact on vaccination rates, than any of the preceding kindergarten classes had. This, too, justifies the different treatment. Finally, § 10-204a still does soften the impact on pre-K students, albeit to a lesser extent, by providing them an extra year to become vaccinated.

Because any age-based distinctions satisfy rational basis review as a matter of law, the district court properly dismissed WTP's equal protection claim.

### E. WTP's parental rights claim (count four) fails because it is subsumed within their free exercise claim.

The District Court properly dismissed WTP's childrearing claim, concluding that it was coextensive with and subsumed by WTP's free exercise claim. Appx.29-30. When considering a similar joint free exercise and parental rights challenge to a child labor law in *Prince*, the Supreme Court observed that the parental rights aspect of the challenge "extends no further than that to freedom of religion, since in the circumstances *all that is comprehended in the former is included in the latter*." 321 U.S. at 164 n.8 (emphasis added). Therefore, a parent "cannot claim freedom from compulsory vaccination for the child *more than for himself* on religious grounds." *Id.*, 166 (citing *Jacobson*, 197 U.S. 11) (emphasis added).

Here, because WTP's parental rights challenge is grounded in the alleged right to control their children's religious upbringing, Appx.48 (¶64), it is subsumed within their free exercise challenge. Since conditioning school enrollment on vaccination does not violate the free exercise clause, *see Phillips*, 775 F.3d at 543, the Plaintiffs' parental rights challenge, which is dependent on the same claim of religious freedom, necessarily also fails and must be dismissed. *See Skoros v. City*

61

*of New York*, 437 F.3d 1, 41 (2d Cir. 2006) ("[plaintiff] has no parental right claim independent of the Establishment and Free Exercise claims that we have already rejected as without merit"); *Leebaert*, 332 F.3d at 143 (rejecting argument that "combining a free exercise claim with a parental rights claim" requires higher standard of scrutiny than otherwise would apply).

Even if WTP could bring a free-standing childrearing claim separate from its free exercise claim, they have failed to do so because they have not alleged the violation of a fundamental right. *See Leebaert*, 332 F.3d at 139-40 (claim of violation of parental rights fails unless law "impinges" on "fundamental right"). As previously explained, the Free Exercise Clause "does not provide a right for religious objectors to be exempt from . . . compulsory inoculation law[s]." *Caviezel v. Great Neck Pub. Sch.*, 739 F. Supp. 2d 273, 285 (2010), *aff'd*, 500 Fed. Appx. 16 (2d Cir. 2020); *Phillips*, 775 F.3d at 543; *see also Wisconsin v. Yoder*, 406 U.S. 205, 230 and n.20 (1972) (citing *Jacobson* as one example of when law enacted for public welfare would be constitutional despite infringing on parental autonomy); *id.*, 233-34 ("the power of the parent, even when linked to a free exercise claim, may be subject to limitation . . . if it

62

appears that parental decisions will . . . have a potential for significant social burdens.").  And this Court has "agree[d]" with decisions from other circuit courts of appeal recognizing more broadly that "the parental right to direct the upbringing and education of children . . . does not include a right to exempt one's child from public school requirements."  *Leebaert*, 332 F.3d at 140-41.  Accordingly, the district court properly dismissed WTP's childrearing claim for failure to state a claim.

**F.  The District Court properly dismissed Plaintiff Elidrissi's IDEA claim (count five) because she failed to plead that her child is a "child with a disability," and because her IDEA claim fails on the merits.**

**1.  Plaintiff Elidrissi failed to plead that her child is a "child with a disability"**

Plaintiff Elidrissi alleges that her "oldest child is disabled within the meaning of the IDEA," and that she will "choose not to comply" with the vaccination requirements because of her personal religious beliefs. Appx.49 (¶¶ 71-72).  She further alleges that P.A. 21-6 "violates the IDEA" because it does not provide any mechanism for providing disabled children whose parents choose not to vaccinate with a free and appropriate public education ("FAPE").  Id. (¶¶ 70, 75).

The District Court properly dismissed this claim because Plaintiff Elidrissi has failed to allege facts that, if true, would establish that her child is a "child with a disability" within the meaning of 20 U.S.C. § 1401(3). Appx.31; *see Weixel v. Bd. of Educ.*, 97 Civ. 9367 (DAB), 2000 U.S. Dist. LEXIS 11041, at *18 (S.D.N.Y. Aug. 3, 2000) ("the IDEA's procedural requirements are not triggered if the plaintiff is not disabled within the meaning of [§ 1401 (3)]"); *see also* 34 C.F.R. §300.8 (a) (1) (further defining "child with a disability"). She simply alleges, without any factual support, that her child is "disabled within the meaning of the IDEA." Appx.49 (¶ 71). This assertion is merely a legal conclusion and is not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678.

On appeal, Plaintiff Elidrissi argues that in pleading her son "receives special services," her Complaint is sufficient. Appx.44 (¶40). It is not. A child who "only needs a related service and not special education . . . is not a child with a disability . . . ." 34 C.F.R. § 300.8(a)(2); *Marshall Joint Sch. Dist. No. 2 v. C.D.,* 616 F.3d 632, 641 (7th Cir. 2010). Plaintiff Elidrissi fails to allege that her child needs special education. WTP's argument that every allegation that a child receives "services" should support the inference that the child also needs "special education"

would erase the distinction created in § 300.8(a)(2) between related services and special education.  Therefore, claims alleging only that the child needs services are subject to dismissal.  Because Plaintiff Elidrissi has not pleaded this threshold requirement for a claim under the IDEA, her claim must be dismissed.

## 2. Section 10-204a does not violate the IDEA

In their motion to dismiss, the State Defendants also argued that Plaintiff Elidrissi's IDEA claim failed on its merits.  Although the District Court did not reach these issues, and Plaintiff Elidrissi does not address them on appeal, this Court may affirm the District Court's judgment on these alternative grounds.  *See Allco Fin. Ltd. v. Klee,* 805 F.3d 89, 93 (2d Cir. 2015)("[W]e are entitled to affirm the judgment on any basis that is supported by the record.").

First, § 10-204a does not violate the IDEA because the vaccination requirements apply generally to all school students regardless of whether or not they are disabled.  In *N.D. v. Hawaii Department of Education*, 600 F.3d 1104 (9th Cir. 2010), the Ninth Circuit held that a decision to close public schools on certain days in order to address a budget crisis did not violate the IDEA, reasoning that "Congress did not intend for the

IDEA to apply to system wide administrative decisions" such as school closures, which "affect all public schools and all students, disabled and non-disabled alike." *Id.*, 1116. Relying on *N.D.*, the District Court in *V.D. v. New York*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019), rejected an IDEA challenge to New York's repeal of its religious exemption, concluding that the IDEA "is designed to preserve the existing placement for an individual child—not to enjoin systemic action." *Id.*, 94 (emphasis in original); *see also J.T. v. de Blasio*, 500 F. Supp. 3d 137, 189-90 (S.D.N.Y. 2020) (rejecting IDEA challenges to school closures during the COVID-19 pandemic because the closures applied to "every student in the district, abled and disabled"). The same rationale applies in the present case.

Second, for all the reasons laid out in *V.D.*, 403 F. Supp. 3d at 76, P.A. 21-6 § 1 is wholly consistent with the requirements of the IDEA. In that case, following New York's repeal of its religious exemption, parents of students with disabilities who objected to vaccines on religious grounds claimed that the repeal (1) was preempted by the IDEA,[6] and (2) altered

---

[6] Although Plaintiff Elidrissi does not mention preemption in count five, she seeks "[a] declaratory judgment finding that the [IDEA] preempts" P.A. 21-6. Appx.50 (Prayer for Relief (F)).

their children's educational placements and therefore violated the "stay put" provision of 20 U.S.C. §1415 (j), which requires children to remain in their then-current placements until disputes about proposed changes to those placements are resolved. *Id.*, 80.

Rejecting the argument that the IDEA preempted the repeal of the religious exemption, the District Court reasoned that "it is entirely possible to comply with both the immunization provisions . . . and the IDEA." *Id.*, at 88. The court noted that the plaintiffs "do not allege that their children are unable to receive vaccinations as a result of their disabilities," but that they had instead "made the affirmative choice not to vaccinate their children for non-medical reasons, thus opting out of public, private, and parochial schools in New York state." *Id.* (emphasis added) Although the plaintiffs were "well within their right to do so," the IDEA "does not entitle them to a religious exemption to a generally-applicable health and welfare law." *Id.* (citing *Phillips*, 775 F.3d at 543).

The *V.D.* court also emphasized that if it "were to accept" the plaintiffs' argument that the IDEA preempted the repeal of the religious exemption, "a host of neutral school policies would be subject to invalidation," including "curricula choices, required reading, and even

67

uniform requirements," whenever individual parents objected to them on religious grounds. *Id.*, 88. This would be wholly inconsistent with the IDEA's statutory scheme, which "envisions a large role for states in 'setting educational policy . . . [and] implement[ing] the statute's goals.'" *Id.*, 90 (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 777 (2d Cir. 2002)). It would also undermine the basic principle that the IDEA was modeled to "serve all disabled children," not the individual "allegations of . . . single interested part[ies]." *Id.* (emphasis in original; internal quotation marks omitted).

The District Court also concluded that the repeal did not violate the "stay put" provision of § 1415(j), reasoning that "it was plaintiffs' affirmative decision not to comply with the neutral requirement imposed by the repeal that led to an alteration of services—not any unilateral action taken on the part of the state." *Id.* (emphasis in original). The repeal simply "announced a new and constitutionally-permissible condition for school attendance, and provided all parents . . . with an opportunity to comply with its terms." *Id.*, 93. Accordingly, the court concluded that the plaintiffs "have no right under the IDEA to demand that a religious exemption be provided to their children." *Id.*

68

For these same reasons, Plaintiff Elidrissi's claim that § 10-204a violates the IDEA fails as a matter of law. She does not allege that her child is medically unable to be vaccinated (which would potentially entitle that child to a medical exemption), but that she will "choose not to comply" because of her religious views. Appx.49 (¶ 71-72). Although she is entitled to make that choice, it will be her choice not to comply with the vaccination requirements, not the requirements themselves, that will alter the educational services being provided to her child. The IDEA cannot be used as a vehicle to secure religious accommodations not otherwise required by the Constitution. *See M. L. v. Smith*, 867 F.3d 487, 492-93 (4th Cir. 2017) (holding that student was not denied FAPE merely because individualized education plan, which was adequate in all other respects, did not include preferred religious instruction). To the contrary, "[t]he IDEA certainly has a secular purpose and its primary effect is one that does not advance religion." *Id.*, 496-97 (quoting *Peck ex rel. Peck v. Lansing Sch. Dist.*, 148 F.3d 619, 629 (6th Cir. 1998)). Accordingly, Plaintiff Elidrissi's claim that § 10-204a violates the IDEA fails as a matter of law.

Finally, to the extent Plaintiff Elidrissi is seeking a wholesale invalidation of § 10-204a, she would not be entitled to this relief even if § 10-204a did violate the stay put provision of the IDEA.  The only relief Plaintiffs could obtain is an order requiring Plaintiff Elidrissi's child to remain in his/her current education placement.  *See V.D.*, 403 F. Supp. 3d at 94; *J.T.*, 500 F. Supp. 3d at 108.

Accordingly, even if Plaintiff Elidrissi had plead the "child with a disability" requirement, the District Court's dismissal of her IDEA claim should be affirmed on these alternative grounds.

## <u>CONCLUSION</u>

For all the foregoing reasons the judgment of the District Court dismissing the entirety of Plaintiffs'-Appellants' claims should be affirmed.

70

Respectfully submitted,
DEFENDANTS-APPELLEES

CONNECTICUT OFFICE OF EARLY
CHILDHOOD DEVELOPMENT,
CONNECTICUT STATE
DEPARTMENT OF EDUCATION,
and CONNECTICUT DEPARTMENT
OF PUBLIC HEALTH

WILIAM TONG
ATTORNEY GENERAL

CLARE E. KINDALL
SOLICITOR GENERAL

By: */s/ Darren P. Cunningham*
Darren P. Cunningham
Timothy J. Holzman
Assistant Attorneys General
Alayna M. Stone
Associate Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel. (860) 808-5210
Fax (860) 808-5385
darren.cunningham@ct.gov
timothy.holzman@ct.gov
alayna.stone@ct.gov

## <u>CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

I hereby certify that this brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 13,638 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: May 20, 2022

*/s/ Darren P. Cunningham*
Darren P. Cunningham
Assistant Attorney General

## CERTIFICATION OF SERVICE

I hereby certify that on this 20th day of May, 2022, I caused the foregoing brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Darren P. Cunningham*
Darren P. Cunningham
Assistant Attorney General