# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| We The Patriots USA, Inc., | : | |
| Et Al., | : | |
| v. | : | 22-249-cv |
| | : | |
| Connecticut Office of Early | : | |
| Childhood Development, et al. | : | November 22, 2022 |

## APPELLANTS'S LETTER BRIEF AN APPLICABILITY OF
## M.A. V. ROCKLAND COUNTY DEPARTMENT OF HEALTH, ET AL.

On the relation of bodies and souls, both the Ancient Greek and the Judeo-Christian traditions agree: Spirit triumphs over matter.

"I never thought your announcements/Could give you -- a mere human being --/Power to trample the gods' unfailing, Unwritten laws. These laws weren't made now/Or yesterday. They live for all time" *Antigone*.

"For what shall it profit a man, if he shall gain the whole world, and lose his soul?"

*Mark*, 8:36.

Can religious believers find space to live out their creeds in Connecticut?

------

1

After argument before Circuit Judges Pierre N. Level, Denny Chin and Joseph F. Bianco, the Court issues an order directing the parties to submit a letter brief not to exceed 15-pages in length within 14 days of this Court's decision in *M.A., et al. v. Rockland County Department of Health*, et al., No 21-551. The *M.A.* decision was decided on November 9, 2022. The appellants timely file this letter brief.

I.      **The *M.A.* Decision – A Reversal After The District Court Granted The Defendant's Motion For Summary Judgment; In The Instant Case, The Plaintiffs, Raising Claims Identical To Those In *M.A.*, Were Denied Discovery As The Action Was Dismissed**

The *M.A.* case involved a challenge to New York vaccination requirements for school children against measles, raising procedural due process, equal protection and First Amendment free exercise claims. The trial Court granted summary judgment as to all claims in favor of public officials, dismissing the action. This Court vacated the trial Court ruling as to the free exercise claim and remanded for trial on that claim. The ruling was based on this Court's determination that there were "factual questions" about whether the emergency declaration supporting the vaccination policy requiring a jury's fact-finding, and that, on the record in *M.A.*, it was not apparent what level of scrutiny – rational basis or strict scrutiny – was appropriate.

At the outset, the plaintiffs in the instant case note the fundamental difference between the two cases: *M.A.* was decided after summary judgment, and after the parties had conducted discovery to explore their claims and defenses. In the instant case, the trial Court ruled, as a matter of law, that the allegations of the Complaint failed to state a claim, and dismissed the action without the parties being able to conduct discovery. Both the regulation at issue in Rockland County and the Connecticut statute at issue in the instant case are virtually identical – both permit a student to enjoy a medical exemption from a vaccination requirement; both deny any student the right to claim a religious exemption. At a minimum, it would appear that the similarity between the two regulations requires this Court to vacate the District Court's judgment and to remand for further proceedings. It simply cannot be said that there are no conceivable facts that can be discovered to warrant dismissal pursuant to Federal Rules of Civil Procedure 12b(6).

Neither can it be said, nor was it alleged, that the Complaint was defective on its face, thus running afoul of the need, even in a notice-pleading context, to plead sufficient facts to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

II. ***M.A.*** **Addresses The Same Issue Presented In The Instant Case –
What To Make Of A Regulatory Regime Denying A Religious
Exemption, But Permitting A Medical Exemption?**

At issue in both *M.A.* and the instant case is application of the general
applicability standard in a case burdening the free exercise of religion. In *M.A.*,
Rockland County permitted children be exempt from the vaccination requirement if
they had valid medical reasons for doing so, but denied children the right to a
religious exemption. *M.A.*, slip op., p. 21. So, too, in Connecticut. Children could
claim a medical exception but were denied the right to claim a religious exemption.
App. 40, Para. 17.

In both cases, appellants question what the government interest the
vaccination regulations were intended to serve. If the regulations are intended to
prevent the spread of physical illness, neither regulation explains why permitting
medically exempt children to attend school serves that interest. The medically
exempt are as apt to spread infectious disease as a religiously exempt child. Indeed,
a medically exempt child might suffer more serious health effects if exposed. *M.A.*,
p. 21.

On its face, the CT regulation and Rockland County regulation seem
selectively to "impose burdens only on conduct motived by religious belief." *Church
of the Lukuni Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993.) On their
face, both regulations "prohibit religious conduct while permitting secular conduct

4

that undermines the government's interest in a similar way. *Fulton v. City of Phila.*, 141 S.Ct 1868, 1877 (2021). "A law is … not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *Cent. Rabinical Cong. Of the U.S. & Can. V. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014).

As this Court noted in *M.A.*, a regime with a purported purpose of assuring the general health of students that prohibits religious exemptions while forbidding religious exemptions raises questions.

> Rockland County's interest in issuing the Declaration could be to stop the transmission of measles, which might lead a factfinder to question why there was a medical exemption, where, … medically exempt children are 'every bit as likely to carry undetected measles [as] a child with a religious exemption and are much more vulnerable to the spread of the disease and serious health effects if they contract it.

*M.A.,* p., 21 (citation omitted). Judge Park's concurrence was more forceful: Rockland County's regulation "was not generally applicable because, by allowing a religious exemption, it 'prohibit[ed] religious conduct while permitting secular conduct that undermine[d] the government's interest in a similar way," citing *Fulton*, at 1877." *M.A.,* Park concurring, pp. 2-3.

What animates a seemingly facially neutral regulation that appears to be underinclusive is a "fact-intensive question that should be explored at trial through

5

the examination of evidence that supports or undermines" the government's claims. *M.A.,* at 21. The *M.A.* Court took pains to note that among the factors a jury should consider is whether the government's stated purpose is pretextual.

The appellant here concedes that, as reported on the records thus far assembled, there are factors present in *M.A.* that are not present – at least not yet – in the instant case. Various comments by public officials in Rockland County made part of the record in the Rockland County case gave rise to the possibility that the vaccination policy was inspired, in whole or in part, by religious animus. One official declared, in a public hearing: "[t]here's no such thing as a religious exemption," and, "anti-vaxxers" are "loud, very vocal, and very ignorant." *M.A.,* p. 9. As the *M.A.* Court noted, these comments could support an inference of hostility to religious belief that defeat any claim of neutrality. *Id.*, p. 13.

The appellants cannot plead facts that they have not been permitted to attempt to discover.

### III. The District Court Applied The Wrong Standard, Thus Requiring Reversal; Strict Scrutiny Should Be The Applicable Standard In Any Abridgement Of The Free Exercise Of Religion

This Court can and should affirmatively state that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), a pre-incorporation case predating the evolution of contemporary standards of review, is of no use in evaluation free exercise of religion claims in the twenty-first century. It is a shopworn classic of a case pressed into

6

service during an emergency; now that the COVID-19 pandemic has passed, a more reasoned approach to religious liberty claims can, and should, evolve. The opinion in *M.A.* provides such an opportunity to move in that direction. In a claim asserting an abridgement of the right to religious freedom, the standard of review should *always* be strict scrutiny. To do less is to run the risk that the state will minimize the import of religious belief for those with views outside the mainstream.

*M.A.* suggests without expressly holding that in a claim pitting free exercise of religion against the state's interest in public health, rational basis review will never be enough to assure that religious belief is safe and secure from governmental overreach. Notwithstanding the fact that *M.A.* was submitted to this Court after a District Court granted summary judgment, this Court nonetheless held that the question of pretext was so "fact-intensive" as to require exploration "at trial." *M.A.*, pp. 20-21. "In sum, because factual questions about the [Rockland County regulation] pervade the issues of neutrality and general applicability, the question of what level of scrutiny applies cannot be resolved on summary judgment,…" *Id.*, p. 22. The appellants urge this Court to avoid concluding that the factual questions in *M.A.* are so unique as to make the case an outlier. In any case in which a religious exemption is proscribed but a medical exemption is permitted there will be questions about what motivates the state to limit religious freedom.

Requiring strict scrutiny to be the standard for evaluation of any claim of abridgement of religious liberty would not undermine the policy animating *Emp. Div., Dep't of Hum. Res. Of Or. V. Smith,* 494 U.S. 872 (1990). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.,* at 879., cited at *M.A.,* p. 14. Religious liberty is the most compelling and fundamental interest imaginable for a believer; the state should only be permitted to limit it for compelling reasons of its own, and the means of curtailing it must of necessity be narrowly drawn to pursue the state's interest. *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022).

What's more, Connecticut's denial of a religious exemption extends not simply to public schools, but to all schools licensed by the state, including private schools. Under the Connecticut regime, co-religionists opposed to vaccination are forbidden to send their children to a school respecting their beliefs on the grounds that this undermines public health. Yet a medically exempt child is free to attend any school. Query: What makes a student whose family opposes vaccination of religious grounds a threat to public health, while transforming the medically exempt into an acceptable risk? Religious believers are super-spreaders but the medically exempt are not? Such a regime is animated by an implicit hostility to religious believers:

their souls can be negotiated away in the name of public safety, while the body of a medically exempt child must be protected at all costs?[1]

Requiring any denial of a religious exemption to be evaluated by strict scrutiny is consistent with the teaching of *Planned Parenthood v. Casey*, 505 U.S. 833, 857 (1992), which rejected a "plenary override" of any individual liberty claims under the Constitution. Clearly, the right to free exercise of religion is as deserving of the right to decide whether to bring a fetus to term. Nothing in the Supreme Court's decision in *Dobbs v. Jackson Woman's Health Organization*, 597 U.S. ___ (2022), suggests otherwise. Abortion is not a right of the sort with same textual and historical support as the First Amendment's right to free exercise of religion. One can be skeptical about contemporary substantive due process without concluding that the state has acquired the right easily to trample upon historic faiths – even if the trampling is done for the most laudable of reasons.

Judge Park's observation in footnote four of the concurrence of *M.A.* bears repeating and emphasis: "[W]e have never said that allowing some unvaccinated students (i.e., those with medical exemptions) to mingle with their peers in schools, while excluding religious objectors, would be constitutional). *M.A.*, Park

---

[1] At the very least, discovery is necessary to tease out the logic supporting how these distinctions are drawn.

concurrence, f.n.4, p. 4. It has not been said, the appellants here suggest, because it cannot, as a matter of law, be supported.

The District Court's conclusion that *Phillips v. New York*, 775 F.3d 538 (2d Cir 2015) defeated the plaintiffs claim before the Court even considered what standard of review was applicable, is surely error. It is tone deaf to the importance claims of conscience and freedom exercise of religion that are fundamental to our way of life. If permitted to stand, the ruling will lend comfort to those who believe that the public health and welfare require a more aggressive application of a centralized police power in the United States, a notion at odds with both the historic commitment to federalism and the separation of powers.

Beware the public health state; it is a dystopic vision that threatens our nation's traditions.

## IV.    Conclusion

This Court should vacate the judgment of the District Court and remand this case for further proceedings with direction to apply a strict scrutiny standard to the claims raised.

Respectfully Submitted,

/s/ Norman A. Pattis /s/
Norman A. Pattis, Esq.
PATTIS & SMITH, LLC
383 Orange Street, 1st Fl.
New Haven, CT 06511
T: (203) 393-3017
F: (203) 393-9745
npattis@pattisandsmith.com

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1 because it is fewer than 15-pages in length, as required by this Court's order asking for a letter brief.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Dated: November 22, 2022

/s/ Norman A. Pattis/s/
Norman A. Pattis

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 22, 2022, an electronic copy of the foregoing Letter Brief Of The Plaintiffs-Appellants was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/ Norman A. Pattis /s/
Norman A. Pattis
