

OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

*Tel: ( 860 ) 808-5020*
*Fax: (860) 808-5347*

November 23, 2022

Catherine O'Hagan Wolfe, Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY  10007

RE:  <u>We The Patriots USA, Inc. v. Connecticut Office of Early Ch.</u>, No. 22-0249-cv, Defendants'-Appellees' Supplemental Brief

Dear Clerk of Court O'Hagan Wolfe:

In accordance with the Court's Order, *see* Entry No. 98, the State Defendants[1] submit this letter brief addressing the impact of the Court's decision in *M.A. v. Rockland County Department of Health*, 21-551-cv ("*M.A.*"), on the issues in this appeal.

As detailed below, *M.A.* does not control here. The emergency declaration at issue in *M.A.* is highly distinguishable from the school vaccination requirement in Conn. Gen. Stat. § 10-204a, as amended by Public Act No. 21-6 ("P.A. 21-6"), served different purposes, and was implemented under very different circumstances.  The record in *M.A.* was

---

[1] The State Defendants consist of the Connecticut Office of Early Childhood Development, the Connecticut Department of Education, and the Connecticut Department of Public Health.

also "underdeveloped," *M.A.* at 20, on the question of "substantial underinclusiveness" in ways that the record here is not. Moreover, unlike here, the *M.A.* plaintiffs had evidence that could implicate a religious animus, that is absent here.

Because *M.A.* has no bearing on this case, the District Court's judgment should be affirmed for all of the reasons set forth in the State Defendants' main brief and in the District Court's decision.

## I. The Court's decision in *M.A.*

In 2018, there was a measles outbreak in Rockland County, New York. *M.A.*, at 4. After cases continued rising, defendant Ed Day, a Rockland County Executive, issued a Local State of Emergency Declaration ("Declaration") that barred unvaccinated children from "place[s] of public assembly," including schools, unless they had a medical exemption to vaccination or serological immunity.[2] *Id.*, 7-8.

---

[2] The Declaration provided: "From 12:01 a.m. March 27, 2019 to 11:59 p.m. on April 25, 2019, no parent or guardian of a minor or infant under the age of 18, shall cause, allow, permit, or suffer a minor or infant under their supervision, to enter any place of public assembly in Rockland County, if that minor or infant is not vaccinated against measles for any reason other than being serologically immune to measles as documented by a physician, or prevented from receiving a measles vaccination for a medical reason documented by a physician, or because the infant is under the age of 6 months." *M.A.*, 7-8.

Day testified at his deposition that he issued the Declaration in response to concerns about a rise in measles during the upcoming Easter and Passover holiday seasons. *Id.*, 8. Day later lobbied the New York legislature to repeal New York State's religious exemption to their school vaccination requirements. *Id.*, 9. Importantly, during his remarks, Day stated that "[t]here's no such thing as a religious exception," and "characterized 'anti-vaxxers' as 'loud, very vocal, also very ignorant.'" *Id.*

The plaintiffs challenged the legality of the Declaration, claiming that it violated the free exercise clause (among other claims) by targeting them based on their sincerely held religious beliefs. *Id.* The District Court granted the defendants' motion for summary judgment on all claims. *Id.* As to the plaintiffs' free exercise claim, the District Court held that the Declaration was a neutral law of general applicability and was, therefore, subject to rational basis review pursuant to *Emp't Div. v. Smith*, 494 U.S. 872 (1990) ("*Smith*"). *Id.*, 10-11. The District Court determined that the Declaration satisfied rational basis review and, in the alternative, would have satisfied strict scrutiny even if subject to that standard. *Id.*, 11-12.

This Court held that the District Court erred, and reversed and remanded for trial on the free exercise claim, and for further proceedings to

3

determine whether partial summary judgment was warranted on the plaintiffs' remaining claims. *Id.*, 12-13 and n.4. The Court concluded that there were triable issues of fact as to whether the Declaration was neutral and generally applicable, and that these disputes precluded a determination at the summary judgment stage of the appropriate level of scrutiny. Critically, with respect to neutrality, the Court determined that a reasonable fact finder could have concluded that Day's "derogatory" statements evidenced discriminatory animus against religious practices.

Regarding general applicability, the Court—emphasizing "the underdeveloped record," *id.*, 20—determined that: (1) there was a factual dispute as to who the Declaration applied to, *i.e.*, only to children who were unvaccinated for religious reasons (as the plaintiffs argued), or to children who were unvaccinated for any reason other than medical need, including but not limited to religious reasons (as defendants argued), *id.*, 20-21; and (2) there was a genuine dispute as to what governmental interest the Declaration was intended to serve, and a jury could have concluded—depending on which interest it found—that the Declaration was "substantially underinclusive." *Id.*, 21-22.

**II. The Court's neutrality analysis does not control because any claim of religious animus is unpreserved and, as Plaintiffs concede, there is no evidence of religious animus in the legislative record.**

In concluding that there was a genuine issue of material fact regarding whether the Declaration was neutral, the *M.A.* Court relied on Day's deposition testimony that he issued the Declaration out of concern over a rise in measles cases during the Easter and Passover holidays, as well as his subsequent statements that "[t]here's no such thing as a religious exception" and that "anti-vaxxers" were "very ignorant." *M.A.*, at 17. The Court concluded that these "derogatory comments" – which are religious based – could have supported a finding that the Declaration was motivated by religious animus. *Id.*, at 18.

Such rationale does not apply here. Plaintiffs' Amended Complaint is devoid of any such allegations of religious animus, and they did not make any such argument below. *See* Appx.18 (District Court decision noting that "Plaintiffs have not advanced an argument that P.A. 21-6 was motivated by any religious animus"); *see also Mhany Mgmt. v. Cty. of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016) ("[A]n appellate court will not consider an issue raised for the first time on appeal."). Nor is there any statement in the legislative history of P.A. 21-6 suggesting that it was motivated by religious

5

animus.³ Plaintiffs concede this in their main brief. *Pl. Br.*, at 29 ("even if [P.A] 21-6's legislative history is free from expressions of animus"). Accordingly, *M.A.* is not controlling on the issue of neutrality.

### B. General applicability

The *M.A.* Court concluded that two factual disputes precluded a determination at the summary stage that the Declaration was generally applicable. Neither applies here.

#### 1. There is no factual dispute as to whom Connecticut's requirement applies.

First, the *M.A.* Court concluded that there was a factual dispute as to whom the Declaration applied. While the plaintiff argued that the Declaration only applied to unvaccinated children whose parents objected

---

³ Unlike *M.A.*, where the individual who made the remarks was the one who issued the Declaration, P.A. 21-6 was passed not by any individual but by the legislature as a whole. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). "[W]e have been reluctant to attribute [the] motives [of individual legislators] to the legislative body as a whole." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022). Thus, even if Plaintiffs could identify hostile remarks by an individual legislator—and they admit there are none—that would not raise a triable issue regarding religious animus. *E.g. Tingley v. Ferguson*, 47 F.4th 1055, 1087 (9th Cir. 2022) (rejecting argument that allegedly hostile comments made by legislator rendered law non-neutral in part because "[s]tray remarks of individual legislators are among the weakest evidence of legislative intent").

6

to vaccines for religious reasons, the defendants argued that the Declaration applied to all unvaccinated children, regardless of religion. *M.A.*, at 20. But because of the "underdeveloped record," this Court could not determine which was correct. *M.A.*, 20-21.

Here, there is no question as to whom § 10-204a applies. The plain language of § 10-204a clearly and unambiguously imposes a vaccination requirement on <u>every</u> child who can safely receive one, which necessarily includes children who object to vaccines for non-religious reasons, including ideological, moral, or other reasons. *See We the Patriots USA, Inc.*, 17 F.4th at 282 (addressing applicability of employment vaccination requirement).

> **2. There is no dispute here about the purpose the § 10-204a was meant to serve, and even there was, it would not preclude dismissal in the context of a school vaccination requirement.**

In *M.A.*, this Court reversed the District Court's general applicability determination pursuant to the "substantially underinclusive" doctrine. A law is substantially underinclusive, and thus not generally applicable, if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). In other words, a law is substantially underinclusive if it "regulates religious conduct while

7

failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *We the Patriots USA, Inc.*, 17 F.4th at 284-85. "Whether two activities are comparable . . . must be judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). "Comparability is concerned with the risks various activities pose." *Id.*

In *M.A.*, there was a "dispute regarding what governmental interest the Declaration was intended to serve," which prevented the Court from being able to determine whether the Declaration was substantially underinclusive. *M.A.*, at 21. On the one hand, the purpose could have been to "stop the transmission of measles," which could have led a factfinder "to question why there was a medical exemption" and, thus, potentially conclude that the Declaration was substantially underinclusive, since "medically exempt children are every bit as likely to carry undetected measles [as] a child with a religious exemption and are much more vulnerable to the spread of the disease and serious health effects if they contract it." *Id.*, at 21 (quotation marks omitted). On the other hand, the purpose could have been to "encourage vaccination," in which case the Declaration "could be viewed as a reasonable method for doing so." *Id.*

That rationale does not apply here. There is no dispute about the governmental interest that § 10-204a serves: to protect the health and safety of Connecticut students and the broader public. *See St. Def. Br.*, at 38. As the District Court recognized, the legislative history repeatedly identifies this as the governmental interest that prompted P.A. 21-6.[4] Appx. 20-21 and n.10 (citing legislative debate and noting that "state legislators identified that the purpose of this law is to protect community health," and that "[t]he state has an interest in protecting the health of Connecticut's school children"). And because the legislative history reflects that this is the actual governmental interest, the concerns expressed in Judge Park's concurring opinion in *M.A.* about the state ***artificially***

---

[4]That is also how then-Judge Alito—upon whose decisions Plaintiffs rely—framed the state's interest in the medical exemption to the controlled substances law upheld in *Smith*: in terms of protecting both individual and public health. *See Blackhawk v. Pennsylvania*, 381 F.3d 202, 211 (3d Cir. 2004) (explaining that purpose of drug control law in *Smith* was "to protect public health and welfare" generally, and that exempting individuals who get a prescription from their physician was consistent with that government interest because it "serve[s] the patient's health and . . . the overall public welfare"). It is also how courts, including this one, have framed the state's interest when addressing substantial underinclusiveness challenges to vaccination requirements in the employment context. *We the Patriots USA, Inc.*, 17 F.4th at 285; *Doe v. Mills*, 16 F.4th 20, 30-31 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022).

9

framing its interest in more general terms so as to defeat a substantially underinclusive argument are not present.[5]

In the District Court, Plaintiffs argued that the governmental interest should be framed more narrowly in terms of "preventing the spread of contagious disease." Appx.20 (quotation marks omitted). The District Court rejected that argument because it was not supported by the legislative record. *Id.* Nor did Plaintiffs challenge that aspect of the District Court's ruling on appeal. *Pl. Br.*, at 29-32. Notwithstanding, there is no support for the proposition that the state's interest in requiring childhood vaccination to attend school is merely in "preventing the spread of

---

[5]The State Defendants also disagree with Judge Park's interpretation of *Phillips v. City of New York*, 775 F.3d 538 (2d Cir.), *cert. denied*, 577 U.S. 822 (2015), in footnote 4 of his concurring opinion in *M.A.* New York's vaccination law at the time contained both religious and medical exemptions. Therefore, by indicating that the religious exemption was not constitutionally required, this Court recognized—if only implicitly—that a school vaccination law permitting medical but not religious exemptions would have been a neutral law of general applicability under *Smith*. Indeed, *Phillips* "agree[d] with" the Fourth Circuit's decision in *Workman v. Mingo County Bd. of Educ.*, 419 F.App'x 348, 353-54 (4th Cir. 2011), which upheld a school vaccination requirement that allowed medical but not religious exemptions. *Accord Smith*, 494 U.S. at 888-89 (listing "compulsory vaccination laws" as example of laws that should not receive strict scrutiny, referring to case addressing school vaccination law that permitted medical exemptions upon submission of "a certificate showing physical disability which might contra-indicate vaccination," but not religious exemptions) (*citing Cude v. State*, 237 Ark. 927 (1964)).

10

contagious disease," without any regard for the preservation of the general health of students and the public, including the health of those students whose medical contraindications preclude vaccination but also render them more vulnerable to contagious diseases. *E.g. Conn. H.R.* (Apr. 19, 2019) (remarks of Repr. Steinberg), at 792-93 ("But the bottom line is this, parents have a right to expect that their children will be safe at school. We are acting to assure that assumption continues to be true").[6]

Because the state's interest in passing P.A. 21-6 is clear, this Court—unlike in *M.A.*—is not precluded from conducting a substantially underinclusive analysis. Thus, the Court must determine whether the medical exemption (1) "undermines" the state's interest in protecting student and public health, and (2) whether it undermines that interest "in a similar way" or is "at least as harmful" to it in terms of the "risks" involved as a religious exemption would be. *Fulton*, 141 S. Ct. at 1877; *We the Patriots USA, Inc.*, 17 F.4th at 284-85.

Applying that standard, § 10-204a is not substantially underinclusive. The present case is markedly different from *M.A.* The

---

[6]The full legislative debate on P.A. 21-6 is available at: extension://efaidnbmnnnibpcajpcglclefindmkaj/https://ctatatelibrarydata.org/wp-content/uploads/lh-bills/2021_PA6_HB6423.pdf

Declaration in *M.A.* was arguably substantially underinclusive because if the state's interest was stopping the spread of measles, permitting children who were unvaccinated for medical reasons to enter public places arguably undermined that interest. That makes sense in that context, since requiring children with medical exemptions to stay home would have served the state's interest in reducing the risk of more measles infections, and would not have required those children to endanger their health (if anything, it would have protected their health).

But the situation is very different here, for three reasons. First, requiring students with medical contraindications to become vaccinated would undermine the state's interest in protecting student and public health because it ***would*** expose those students to (potentially severe) physical harm. In fact, requiring students with medical contraindications to vaccinate "would likely be unconstitutional itself." *Doe*, 16 F.4th at 33; *see also We the Patriots USA, Inc.*, 17 F.4th at 285 (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38-39 (1905), for proposition that "the state may not be permitted to require vaccination of individuals with contraindications").

Second, there was no evidence in *M.A.* to refute that medical exemptions undermined the state's interest "in a similar way" as religious exemptions would have. The opposite is true here. Plaintiffs' Amended Complaint included data compiled by the Connecticut Department of Public Health over approximately ten years leading up to the passage of P.A. 21-6.[7] Appx.116-121. The data shows that in 2019-20, ten times as many kindergarten students claimed religious exemptions as medical exemptions. Appx.120. And over the past decade, the number of religious exemptions has steadily risen, while medical exemptions have remained largely constant. Further, because of "clustering"—a phenomenon that does not apply to medical exemptions—the religious exemptions have caused vaccination rates to drop especially low in certain districts, many below 95%, and some below 90%. *Id.* Given these facts, there simply is no credible argument that the medical and religious exemptions are "comparable" in their relative risks to public health, or that they undermine the state's interests "in a similar way" or to "the same degree."

---

[7] Because the data was incorporated into Plaintiffs' Complaint as an exhibit, it is considered part of Plaintiffs' Complaint and must therefore be presumed true for purposes of a Rule 12(b)(6) motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also* Fed. R. Evidence 803(8).

13

Third and finally, to the extent the Court assessed the comparability of the risks of medical and religious exemptions in *M.A.* on an individual-by-individual basis, *i.e.*, a child with a medical exemption is "every bit as likely" to spread measles as a child with a religious objection, *M.A.* at 21, that method makes no sense in the context of school vaccination laws. In *We the Patriots USA, Inc.*, the Court declined to make "one-to-one comparison[s]" but instead interpreted Supreme Court precedent as "suggest[ing] the appropriateness of considering aggregate data about transmission risks." 17 F.4th at 287. Thus, the Court "doubt[ed] that, as an epidemiological matter, the number of people seeking exemptions is somehow excluded from the factors that the State must take into account in assessing the relative risks" of medical and religious exemptions for purposes of a substantial underinclusiveness analysis. *Id.; accord Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021), rehearing denied, 22 F.4th 1099 (2022). And while the record in *We the Patriots USA, Inc.* contained "only limited data regarding the prevalence" of each objection—which was itself sufficient to defeat a preliminary injunction—the data incorporated into Plaintiffs' Amended Complaint here is far more compelling, showing a decisive (and increasing) disparity between medical

14

and religious exemptions developed from a sample size of several years from hundreds of thousands of school students.

Put simply, there simply is no genuine argument that the medical and religious exemptions are "comparable" in terms of the risks they pose to the state's interest in protecting student and community health and safety. Section 10-204a is not substantially underinclusive. *M.A.* is not to the contrary.

Very truly yours,

*/s/ Darren P. Cunningham*
Darren P. Cunningham
Timothy J. Holzman
Assistant Attorneys General

## CERTIFICATION OF SERVICE

I hereby certify that on this 23rd day of November, 2022, I caused the foregoing to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Darren P. Cunningham*
Darren P. Cunningham
Assistant Attorney General